LENTHERIC, INCORPORATED, Plaintiff, *v.* W. T. GRANT COMPANY, Defendant.

First Department, June 29, 1939.

*Wm. D. Whitney* of counsel [*B. R. Shute* and *James H. McGlothlin* with him on the brief; *Cravath, de Gersdorff, Swaine & Wood,* attorneys], for the plaintiff.

*Eugene M. Foley* of counsel [*Adolph* and *Henry Bloch,* attorneys], for the defendant.

GLENNON, J. The question presented by this controversy is whether a distributor of trade-marked perfumery products is enabled by the New York Fair Trade Act (Laws of 1935, chap. 976, as amd.) to enforce a single minimum price for the sale of any quantity less than one ounce of a given product bearing its trade-mark.

Before referring to the facts which go to make up the case, it might be well to quote section 2 of the New York Fair Trade Act, as amended, and commonly referred to as the Feld-Crawford Law. It reads as follows: " Willfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section one of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

We will refer to so much of the facts as we deem to be necessary in order to indicate our reasons for reaching the conclusion that defendant's acts constitute unfair competition within the meaning of the Fair Trade Act of the State of New York, and as a consequence that a decree should be entered in favor of the plaintiff permanently enjoining the defendant from displaying, selling or offering for sale products bearing plaintiff's trade-mark, brands or names, at prices less than those now specified by plaintiff as the minimum retail prices at which products bearing its trade-marks, brands or names may be offered for sale or sold at retail in the State of New York, or at prices below those which may hereafter be specified by plaintiff, in amendments to or revisions of said

prices now in effect, of which amendments and revisions written notice shall be given to the defendant.

Lentheric owns and has the exclusive right to use the registered trade-marks " Lentheric," " Tweed," " Miracle " and " Shanghai." The trade-mark " Lentheric " appears on all its products, whereas the others identify particular fragrances. Perfumery and toilet products bearing these trade-marks are distributed throughout the State of New York, in fair and open competition with commodities of the same general class produced by others.

Lentheric products admittedly have a good reputation as quality products both among retail dealers and with the general public. They have been widely advertised as such both in New York and nationally, and the plaintiff has built up a valuable good will which attaches to such products and to the trade-marks, brands and names thereof.

In 1937 Lentheric entered into contracts with numerous retail distributors in the State of New York, which contracts provide that the retailer will not advertise, offer for sale or sell in the State of New York Lentheric products at prices less than the minimum resale prices in effect for said products at the time of such offer for sale or sale. Such contracts have been continuously in force since March, 1937.

Pursuant to these contracts, Lentheric in 1937 established minimum retail prices for its products and in August, 1938, issued a revised schedule specifying for its products the minimum prices which have been in effect at all times since August 15, 1938.

One of the most popular types of Lentheric products is " Bouquet." This is a perfumery product, in the nature of a toilet water or eau de cologne, and is distributed in many different fragrances, including " Tweed," " Shanghai," and " Miracle." Among the minimum prices specified on August 15, 1938, are prices for " Bouquet Lentheric." The four-ounce container is priced at one dollar; two ounces are priced at seventy-five cents; and one ounce, or any quantity less than one ounce, is priced at fifty cents.

The Grant Company, with full knowledge of the contracts between Lentheric and retailers in the State of New York, and of the minimum prices specified on August 15, 1938, for " Bouquet Lentheric," thereafter acquired certain containers of " Bouquet Lentheric." These containers were small vials which contained less than one-fifth of an ounce of " Bouquet Lentheric." They had not been prepared by Lentheric, but by third persons who had acquired " Bouquet Lentheric " from sources unknown to Lentheric, had rebottled it in said bottles, and sold them to defendant.

Defendant displayed, offered for sale and sold these vials of " Bouquet Lentheric " to the public at ten cents each with full

knowledge that the price specified by Lentheric for any quantity of " Bouquet Lentheric " less than one ounce was fifty cents.

Retail distributors in the State of New York have complained to Lentheric that defendant's practice of selling fractions of an ounce of rebottled " Bouquet Lentheric " at ten cents, much less than the minimum price specified by Lentheric, is injuring their business, and that the practice tends to lessen the reputation. of Lentheric products as merchandise of high quality and exclusive character.

These facts are summarized fairly by the plaintiff, and are in accord with those outlined by the defendant. We refer to them in this manner solely for the purpose of brevity.

At the outset it might be well to point out that the constitutionality of the act was upheld in *Bourjois Sales Corp.* v. *Dorfman* (273 N. Y. 167). The United States Supreme Court in *Old Dearborn Co.* v. *Seagram Corp.* (299 U. S. 183) declared valid the Illinois Fair Trade Act which is similar to ours. Mr. Justice SUTHERLAND wrote in part as follows:

" The challenge is directed against §2, which provides that wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract made under §1, whether the person doing so is or is not a party to the contract, shall constitute unfair competition, giving rise to a right of action in favor of anyone damaged thereby.

" It is first to be observed that §2 reaches not the mere advertising, offering for sale or selling at less than the stipulated price, but the doing of any of these things wilfully and knowingly. * * *

" In the second place, §2 does not deal with the restriction upon the sale of the commodity *qua* commodity, but with that restriction because the commodity is identified by the trade-mark, brand or name of the producer or owner. The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use of the trade-mark, brand or name in accomplishing such disposition. The primary aim of the law is to protect the property — namely, the good will — of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself.

" Appellants here acquired the commodity in question with full knowledge of the then-existing restriction in respect of price which the producer and wholesale dealer had imposed, and, of course, with presumptive if not actual knowledge of the law which authorized the restriction. Appellants were not obliged to buy; and their voluntary acquisition of the property with such knowledge carried with it, upon every principle of fair dealing, assent to the protective

restriction, with consequent liability under §2 of the law by which such acquisition was conditioned."

Further he said: " The ownership of the good will, we repeat, remains unchanged, notwithstanding the commodity has been parted with. Section 2 of the act does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates ' unfair competition.' See *Liberty Warehouse Co.* v. *Burley Tobacco Growers' Assn.*, 276 U. S. 71, 91–92, 96–97. There is nothing in the act to preclude the purchaser from removing the mark or brand from the commodity — thus separating the physical property, which he owns, from the good will, which is the property of another — and then selling the commodity at his own price, provided he can do so without utilizing the good will of the latter as an aid to that end." (299 U. S. 178, at pp. 193–195.)

The plaintiff in this controversy does not complain of the resale by the defendant of its perfumery products at the price of ten cents per vial, or at any other price which defendant sees fit to fix. It does object, and properly so, to the use of its name in connection with the vial which defendant has used to sell the product at a price which is less than that stipulated in its contracts.

Defendant concedes that the Fair Trade Act gives plaintiff the right to fix a minimum price. It asserts, however, that it challenges its right " to foist on defendant and compel its adherence to and incriminates and irrational scheme to discourage sales of plaintiff's products in small quantities." With that statement we are not in accord. Plaintiff under the act has the right to fix the minimum price at which its commodity can be sold. If the defendant were permitted to sell its vials bearing plaintiff's name it would, in effect, circumvent the very purpose of the law, that is, to protect the good will of the plaintiff and others similarly situated.

Under the circumstances we are of the view that plaintiff is entitled to the relief it seeks. Judgment should be entered accordingly, with costs.

UNTERMYER and DORE, JJ., concur; MARTIN, P. J., and CALLAHAN, J., dissent.

CALLAHAN, J. (dissenting). While I have some sympathy from an economic viewpoint with the construction of the statute con-

tended for in the prevailing opinion, I do not believe that such construction is legally warranted. The New York Fair Trade Act (Laws of 1935, chap. 976, as amd.) provides a scheme to prevent unfair competition by authorizing contracts to be made requiring dealers not to resell commodities except at prices stipulated and by prohibiting as unfair competition the resale of such commodities below the stipulated prices by those who have knowledge of the prices fixed.

Plaintiff is now attempting by indirection through an alleged enforcement of this statute to prohibit the resale of any fractional quantity of its commodity. It is attempting to do this by the device of providing in a contract that no fraction of the article sold will be resold for less than a fixed price. In other words the buyer of an ounce of plaintiff's commodity, if it wishes to resell one-tenth of an ounce must charge the same price that it would for a full ounce, for the resale price fixed for any fractional part of the ounce is the same as the resale price fixed for the whole ounce. This would seem to me to be a restraint upon alienation not contemplated by the Fair Trade Act as now written and, therefore, an illegal restraint. (*Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373, 404.)

In *Prestonettes, Inc.* v. *Coty* (264 U. S. 359) it was held that a seller of goods had not that degree of control over the method of repackaging or merchandising of its product by a purchaser thereof sufficient to prevent smaller quantities (vials of cologne) being made up by such purchaser from larger packages and sold under the original trade-mark. The court said that a purchaser had the right, by virtue of its ownership of the goods, to compound or change what it had bought, divide either the original or modified product and sell as so divided, and that the existence of a trade-mark would have no bearing on that right, when the trade-mark was used in a way that did not deceive the public.

It is true that the court in that case indicated that it was not passing on a case of unfair competition.

Although the basis of plaintiff's claim herein is unfair competition, that claim rests solely on an alleged violation of the provisions of the Fair Trade Act.

While the Supreme Court of the United States said in *Old Dearborn Co.* v. *Seagram Corp.* (299 U. S. 183) that the Fair Trade Acts were intended to protect good will by upholding agreements fixing resale prices, this did not amount to a holding that good will may be protected by restricting the quantities in which a commodity may be resold, in the absence at least of a statute permitting that restriction.

We need not consider the power of the Legislature to provide such a restriction. The question before us is not one of power but one of construction, and as I read the law we have no statute which authorizes a seller to limit the quantity in which his goods may be sold. Therefore, to attempt to regulate resales quantitively by a contract ostensibly fixing fractional resale prices is unwarranted under the Fair Trade Act.

Judgment should be directed for the defendant.

MARTIN, P. J., concurs.

Judgment directed in favor of plaintiff, with costs. Settle order on notice.