GUERLAIN, INC., Respondent, v. F. W. WOOLWORTH Co. et al., Appellants.

Argued May 19, 1947; decided July 2, 1947.

12

*Martin A. Schenck* and *Margaret D. Merli* for F. W. Woolworth Co., appellant. I. The Fair Trade Act (L. 1935, ch. 976, as amd.), as applied below, denies legal effect to the approved rebottling label on which the industry is based. II. Resale of perfume under a label which states the rebottler and the rebottling and mentions the perfumer's name and brand in a true statement of fact, has been generally recognized not to infringe or involve the perfumer's trade-mark, name or brand or to constitute unfair competition. (*Farina* v. *Silverlock,* 6 De G. M. & G. 214; *Hennessy* v. *White,* 6 Wyatt, Webb & A'Beckett Eq. 216; *Canal Co.* v. *Clark,* 13 Wall. 311; *Krauss* v. *Jos. R. Peebles' Sons Co.,* 58 F. 585; *Russia Cement Co. v. Katzenstein,* 109 F. 314; *Russia Cement Co.* v. *Frauenhar,* 133 F. 518; *Champion Spark Plug Co.* v. *Sanders,* 15 Law Week 4467; *Thaddeus Davids Co. v. Davids,* 233 U. S. 461; *Coty* v. *Prestonettes, Inc.,* 285 F. 501; *Coty* v. *Prestonettes,* 3 F. 2d 984; *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.,* 299 U. S. 183.) III. The Fair Trade Act did not destroy, or give the perfumer the right to fix resale prices in, the rebottling industry conducted under approved labels with merely a collateral reference to the perfumer's trade-mark, name and brand. In economics rebottling is opposite to "loss leader" and "cut price". (*F. S. De Voin* v. *W. T. Grant,* 13 Cal. S. B. J. No. 3, 3 C.C.H. Trade Reg. Serv. P25106.) IV. The terms of the Fair Trade Act exclude rebottling from the scope of the act. (*Prestonettes, Inc.,* v. *Coty,* 264 U. S. 359.) V. Authoritative construction has excluded rebottling from the scope of the Fair Trade Act. (*Old Dearborn Distributing Co.* v. *Seagram-*

*Distillers Corp.*, 299 U. S. 183; *Seagram Corp.* v. *Old Dearborn Corp.*, 363 Ill. 610; *Triner Corp.* v. *McNeil*, 363 Ill. 559; *Pep Boys* v. *Pyroil Sales Co.*, 299 U. S. 198; *Max Factor & Co.* v. *Kunsman*, 5 Cal. 2d 446; *R. B. Semler, Inc.*, v. *Kirk*, 27 F. Supp. 630.) VI. Canons of construction are against construing the Fair Trade Act as extending resale price control to the rebottling industry. (*Straus* v. *Victor Talking Mach. Co.*, 243 U. S. 490; *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373; *John D. Park & Sons Co.* v. *Hartman*, 153 F. 24; *United States* v. *Socony-Vacuum Oil Co.*, 310 U. S. 150; *United States* v. *Frankfort Distilleries*, 324 U. S. 293; *Sola Electric Co.* v. *Jefferson Co.*, 317 U. S. 173; *Mallinson Fabrics Corp.* v. *Macy & Co., Inc.*, 171 Misc. 875; *United States* v. *Univis Lens Co.*, 41 F. Supp. 258, 316 U. S. 241; *United States* v. *Bausch & Lomb Co.*, 321 U. S. 707.) VII. Section 2 of the Fair Trade Act, as applied below, impairs this defendant's rights under section 6 of article I of the State Constitution and under the Fourteenth Amendment of the Federal Constitution in that it allows, beyond plaintiff's trade-mark monopoly, control of resale prices in defendant's business and destroys defendant's business in rebottled perfumes long established and conducted under judicially approved labels. (*Darweger* v. *Staats*, 267 N. Y. 290; *Liggett Co.* v. *Baldridge*, 278 U. S. 105; *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.*, 299 U. S. 183; *Bourjois & Co.* v. *Katzel*, 260 U. S. 689; *Hanover Milling* v. *Metcalf*, 240 U. S. 403.)

*John S. Russell* for Nips, Inc., appellant. I. The sale of Nips by appellants does not violate the Fair Trade Act. The commodities sold by the parties are different. There is no competition and the statute is inapplicable. (*United States* v. *Univis Lens Co.*, 316 U. S. 241; *United States* v. *Bausch & Lomb Co.*, 321 U. S. 707; *Mallinson Fabrics Corp.* v. *Macy & Co., Inc.*, 171 Misc. 875; *Calvert Distillers Corp.* v. *Nussbaum Liquor Store, Inc.*, 166 Misc. 342.) II. Plaintiff is attempting by this action to use the Fair Trade Act for a purpose not contemplated by the Legislature. It is attempting to destroy the rebottling business of this appellant and to control the seller, not the price. (*Coty, Inc.*, v. *Hearn Dept. Stores, Inc.*, 158 Misc. 516; *De Voin, Exclusive California Distributor for Guerlain Products* v. *W. T. Grant Co.*, 106 C.C.H. Trade Reg. Serv., pars. 25, 106.) III. The inter-

pretation of section 2 of the Fair Trade Act applied by the Appellate Division in this case violates defendants' rights under the Constitutions of the United States ·and of the State of New York. (*United States* v. *Bausch & Lomb Co.*, 321 U. S. 707; *Superior Oil Co.* v. *Mississippi*, 280 U. S. 390.)

*Lewis G. Bernstein* and *Samuel Stephen Baker* for respondent. I. The rationale of the decisions upholding the Fair Trade Act is that its purpose is to protect the name and good will of the manufacturer. (*Old Dearborn Distributing Co.,* v. *Seagram-Distillers Corp.*, 299 U. S. 183; *Bourjois Sales Corp.* v. *Dorfman,* 273 N. Y. 167; *Lentheric, Inc.*, v. *W. T. Grant Co.,* 257 App. Div. 348, 282 N. Y. 638; *De Voin, Exclusive California Distributor for Guerlain Products* v. *W. T. Grant Co.,* 3 C.C.H. Trade Reg. Serv., pars. 25, 106.) II. Defendants' right to rebottle plaintiff's perfume does not entitle it to ignore plaintiff's price schedule. (*Guerlain, Inc.*, v. *Woolworth Co.,* 170 Misc. 150; *Bourjois, Inc.*, v. *Hermida Laboratories, Inc.*, 106 F. 2d 174; *Prestonettes, Inc.*, v. *Coty,* 264 U. S. 359; *International News Service* v. *Associated Press*, 248 U. S. 215; *Hanover Milling Co.* v. *Metcalf,* 240 U. S. 403; *Martha Washington Candies Co.* v. *Goldstein,* 23 F. Supp. 861; *People* v. *Utica Ins. Co.,* 15 Johns. 358; *Spenser* v. *Myers,* 150 N. Y. 269.) III. If defendants have actually produced a new commodity, they may ·not designate it as Guerlain's Shalimar. IV. The Fair Trade Act is applicable to defendants' sales of rebottled perfumes because use of plaintiff's trade-mark is use of its good will. (*Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.,* 299 U. S. 183.) V. Plaintiff has suffered damage and is confronted with further damage as a result of defendants' activities. (*Yale Electric Corp.* v. *Robertson,* 26 F. 2d 972.)

FULD, J. Plaintiff manufactures and distributes high-grade perfumes and cosmetics which are sold in fair and open competition with other similar products. Among the registered trade-marks owned and used by it are the words " Guerlain " and " Shalimar ". Pursuant to the Feld-Crawford Act (L. 1935, ch. 976, as amd.; now General Business Law, art. XXIV-A), plaintiff and certain of its retailers entered into so-called " fair trade contracts " which set, *inter alia,* a minimum resale price

of $1.60, plus retail sales tax, for plaintiff's " Shalimar " perfume in quantities of " one dram or less ".

Defendant Nips, Inc., whose entire business consists of rebottling perfumes, buys plaintiff's perfumes in the retail market and rebottles them in small glass ampules holding 1/70 of a dram. The ampules of " Shalimar " are individually packed in little paper containers bearing the label:

" NIPS

Perfumes

Genuine French Extracts

Guerlain's Shalimar

Rebottled by Nips, Inc., N. Y.

Wholly Independent of

Guerlain ".

The perfume thus rebottled is sold to a number of variety and chain stores, among them defendant Woolworth Co., which resells to the ultimate consumer for ten cents a package.

In 1938, plaintiff advised both defendants of its fair trade contracts and requested defendant Woolworth to stop selling its products at less than the established minimum resale price. Woolworth refused, and the sales at ten cents a package continued. Consequently, plaintiff seeks injunctive relief under the Fair Trade Act.

Section 1 of that statute (now General Business Law, § 369-a) recognizes and affirms the legality of contracts fixing the prices at which the immediate buyer and all subsequent vendees may sell or resell a commodity " which bears, or the label or content [sic] of which bears, the trade mark, brand, or name of the producer or owner of such commodity * * *." Section 2 (now General Business Law, § 369-b) provides that the willful and knowing advertisement, offer or sale — regardless of whether or not it be by a party to such contract — of " any commodity at less than the price [so] stipulated * * * is unfair competition and is actionable at the suit of any person damaged thereby."

Defendants seek to escape the effect of the statute by urging that in distributing and selling the ampules they are dealing with a commodity other than and different from the product covered

by plaintiff's fair trade contracts. That claim, lacking substance, ignores reality and the dictates of common sense. The ampule contains perfume — of that there can be no possible doubt — and the label explicitly announces that it is "Guerlain's Shalimar". It is a less quantity than that contained in the original bottle, but still it is perfume — plaintiff's perfume — and it is the perfume itself which the purchaser desires and buys, not just the "patented applicator" in which the perfume is rebottled by defendant. Were it otherwise, there would, of course, be no need to identify on the label the specific kind or brand of perfume contained in the ampule. The present case is far removed from those involving dresses made from trade-marked cloth (*Mallinson Fabrics Corp.* v. *Macy & Co., Inc.*, 171 Misc. 875) or lenses ground from trade-marked "blanks". (*United States* v. *Bausch & Lomb Optical Co.*, 321 U. S. 707; *United States* v. *Univis Lens Co.*, 316 U. S. 241.) There, the very form and character of the basic product is altered; a new article, possessing a completely different function, is created. There is, in fact and in effect, a new and different commodity. Here, the original commodity — Guerlain's Shalimar perfume — undergoes not the slightest change in form, content, quality or character; the difference is purely quantitative, the product remains the same, identical save in amount.

Defendants likewise contend that the Feld-Crawford Act was aimed solely at price cutting and therefore does not cover such a situation as the present where the aggregate amount charged for the number of ampules necessary to make up one dram of Guerlain's Shalimar is $7, far more than the minimum price of $1.60 set by plaintiff. While it is true that the statute prevents price cutting, its "primary aim", the Supreme Court of the United States has observed — in discussing the virtually identical Illinois Fair Trade Act — "is to protect the property, namely, the good will, of the producer which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself." (*Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.*, 299 U. S. 183, 193.) More than that, however, defendants' entire argument disregards the fact that, in determining "the price stipulated", the price set by the contract must always be related to the *quantity* which the contract ties to that figure.

There is nothing in the Feld-Crawford Act about proportioning prices to quantity; plaintiff was within its undoubted legal rights in fixing a price of $1.60 for quantities of " one dram *or less* ", and Woolworth violated that law whenever it sold any fraction of a dram of Guerlain's Shalimar for less than $1.60. (See *Lentheric, Inc.,* v. *W. T. Grant Co.,* 257 App. Div. 348, affd. 282 N. Y. 638; *Lentheric, Inc.,* v. *F. W. Woolworth Co.,* 338 Pa. 523.)

Finally, defendants urge that the Feld-Crawford Act does not apply to rebottled goods bearing a label of the type approved in the *Prestonettes* case. (*Prestonettes, Inc.,* v. *Coty,* 264 U. S. 359; same case *sub nom. Coty, Inc.,* v. *Prestonettes, Inc.,* 3 F. 2d 984.) The gist of their argument is that the words " Guerlain's Shalimar " are here used to *describe the contents* of the ampule, not as a trade-mark to *identify the source* of those contents, and that, consequently, the label does not " *bear* " plaintiff's " trade mark, brand, or name ", within the intendment of section 1 of the Act (now General Business Law, § 369-a). The argument, thus revolving around a nice distinction drawn in the law of trade-mark infringement lacks validity in the present situation.

The statute was manifestly aimed and designed to protect the good will of the owner or producer from injury when his trade-mark or name is employed in the resale of goods originally owned or produced by him. As Mr. Justice SUTHERLAND, speaking for the Supreme Court, wrote in the *Old Dearborn* case (299 U. S., *supra,* at p. 195): " Section 2 of the act [enacted in Illinois] does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates ' unfair competition.' "

That legislative purpose — to protect the vendor's good will — frames the issue before us: is the disposition of defendants' ampules being accomplished with the aid of plaintiff's good will? To us, the answer is clear. In employing the words

" Guerlain's Shalimar ", in placing them on the label, defendants are using plaintiff's good will — as symbolized by those words — to facilitate sales. They are not merely *describing* the contents of the ampule, but are, in practical effect, *identifying* the product as plaintiff's, and to that extent they are violating the plain mandate of the Feld-Crawford Act.

It may well be that the reference by defendant Nips on its label to plaintiff's mark and name does not constitute an infringement — as held in the *Prestonettes* case (264 U. S. 359) — but that fact does not in and of itself remove defendants from the purview of the Fair Trade Act. That statute does not draw any distinction between a use of plaintiff's mark *qua* trade-mark and a collateral reference to the mark in describing the product being sold, and we cannot, consonant with the manifest legislative purpose, construe the act as embodying any such distinction. (Cf. e.g., Penal Law, § 2354, subd. 6.) The fact remains that the commodity involved bears the trade-mark and name of the producer of the perfume — the sole condition necessary to render the statute applicable. Defendants are indisputably sharing in plaintiff's good will in the marketing of their ampules, and, while they may be privileged to do this under the law of trade-marks, they are not permitted to do so by the Fair Trade Act. What constitutes a trade-mark or name use under the fair trade statute is not necessarily the same as an infringing use under trade-mark law.

In conclusion, then — defendants are engaged in the distribution, display and sale of a commodity which bears the brand and name of the producer and owner and which is being resold for less than the minimum price specified in fair trade contracts. Such conduct, constituting as we have said, a violation of the Feld-Crawford Act, is properly restrained by injunctive relief. A similar determination has been reached in other States. (*Lentheric, Inc.,* v. *F. W. Woolworth Co.,* 338 Pa. 523, *supra*; *De Voin* v. *W. T. Grant Co.,* Super. Ct. Cal., Feb. 11, 1938, 3 C. C. H. Trade Reg. Serv., par. 25106 [not officially reported].)

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Judgment affirmed.