**PARKE, DAVIS & COMPANY, Plaintiff,**

v.

**AMALGAMATED HEALTH & DRUG PLAN, INC., and 11 Union Pharmacy, Inc., Defendants.**

United States District Court
S. D. New York.
March 6, 1962.

598

Rogers, Hoge & Hills, New York City, George M. Chapman, Charles D. Snead, Jr., New York City, of counsel, for plaintiff.

Robert Goldstein, New York City, for defendants.

LEVET, District Judge.

The plaintiff, Parke, Davis & Company, moves for a preliminary injunction in the above-entitled cause, which is an action for violation of the Fair Trade Act of the State of New York, General Business Law, McKinney's Consol. Laws, c. 20, § 369–a et seq. Affidavits were submitted by both sides. The defendants requested a hearing, and pursuant to such request a hearing was held at which plaintiff produced witnesses who were examined by plaintiff and cross-examined by the defendants. The defendants offered no testimony.

From the affidavits and from the testimony and for the purposes of this application for a preliminary injunction, I find as follows:

1. Plaintiff is engaged in the manufacture, production, sale and distribution of ethical drugs, medicines, preparations and other commodities.

2. Each product manufactured and sold by plaintiff bears one or more of its trademarks, such as "ABDEC," "MYADEC," and "PALADAC," affixed to the products themselves and to cartons in which such products are packaged. "ABDEC," "MYADEC," and "PALADAC" are manufactured and sold by plaintiff.

3. For some years plaintiff has been engaged in an extensive and continuous program of advertising on local and national levels. Plaintiff's identifying trademarks have become favorably known to the trade and commonly accepted by the public as products of high quality.

4. Retail druggists rely upon plaintiff's good will and promotional activities to move plaintiff's products from their shelves. Plaintiff, in turn, relies upon the retailers as an effective link in the chain of distribution for its products to the public. The preservation of plaintiff's good will is essential to its success. The value of plaintiff's good will is in excess of $10,000.

5. Plaintiff has, when necessary, brought enforcement suits to eliminate price violations in the Metropolitan Area of New York City.

6. The defendants have been notified of the stipulated minimum retail resale prices for plaintiff's products and were particularly warned by letters of March 3, 1961 and June 30, 1961 of their price-cutting activities.

7. Defendants, nevertheless, have offered for sale, and have sold, products bearing palintiff's trademarks at prices below those established by plaintiff with retail druggists in the City of New York, as follows:

(a) *On May 31, 1961,* one Frances Rosenthal, a professional shopper employed by Ralph T. Piper, purchased at the said store at 11 East 17 Street, New York City, 100 MYADEC vitamin capsules for a price of $5.75, whereas the fair trade price for said item was $9.67. (See testimony of Frances Rosenthal and stipulation, pp. 122, 123, 124; Ex. 15)

(b) *On June 8, 1961,* one Marion Baehr, a professional shopper employed by Ralph T. Piper, purchased at the said store at 11 East 17 Street, New York City, a 50 cc. bottle of ABDEC vitamin preparation drops for $2.65, whereas the

fair trade price for said item was $3.51. (See testimony of Marion Baehr, pp. 101, 102, 103; Ex. 13)

(c) *On June 21, 1961,* Frances Rosenthal a professional shopper employed by Ralph T. Piper, purchased at the said store at 11 East 17 Street, New York City, 100 MYADEC vitamin capsules for a price of $5.75, whereas the fair trade price for said item was $9.67. (See affidavit of Charles D. Snead, Jr., sworn to January 23, 1962, and testimony of Frances Rosenthal, pp. 122–124, stipulation p. 122; Ex. 16)

(d) *On August 8, 1961,* one Elsie Klamroth, a professional. shopper employed by Ralph T. Piper, purchased at the said store at 11 East 17 Street, New York City, a 50 cc. bottle of ABDEC vitamin preparation drops for $2.65, whereas the fair trade price for said item was $3.51. (See testimony of Elsie Klamroth, pp. 115, 116, 117; Ex. 14)

(e) *On August 15, 1961,* Marion Baehr, a professional shopper employed by Ralph T. Piper, purchased at the said store at 11 East 17 Street, New York City, a 50 cc. bottle of ABDEC vitamin preparation drops for $2.65, whereas the fair trade price for said item was $3.51. (See testimony of Marion Baehr, pp. 100, 101; Ex. 12)

(f) *On August 21, 1961,* Frances Rosenthal, a professional shopper employed by Ralph T. Piper, purchased at the said store at 11 East 17 Street, New York City, 100 MYADEC vitamin capsules for $5.75, whereas the fair trade price for said item was $9.67. (See testimony of Frances Rosenthal and stipulation, pp. 122, 123, 124; Ex. 17; affidavit of Snead, sworn to January 23, 1962, p. 4)

(g) *On November 8, 1961,* at about 2:00 P.M., one Herbert Schneider, a professional shopper employed by Ralph T. Piper, purchased a 50 cc. bottle of ABD EC Drops vitamin preparation from one Joseph Messiana, a clerk at the said store at 11 East 17 Street, New York City, for the sum of $2.65, whereas the fair trade price for said item was $3.51.

(See affidavit of Schneider, sworn to December 11, 1961; testimony of Schneider, pp. 42–46; Ex. 5)

(h) *On November 9, 1961,* at approximately 1:30 P.M., one Mary E. Burke, a professional shopper employed by Ralph T. Piper, purchased a 50 cc. bottle of ABDEC Drops vitamin preparation from a clerk at the said store at 11 East 17 Street, New York City, for the sum of $2.65, whereas the fair trade price for said item was $3.51. (See testimony of Mary E. Burke, pp. 76–84; Ex. 7; affidavit of Mary E. Burke, sworn to December 11, 1961)

(i) *On November 9, 1961,* at approximately 2:10 P.M., one Marion Baehr, a professional shopper employed by Ralph T. Piper, purchased a 50 cc. bottle of ABDEC Drops vitamin preparation from a clerk at the said store at 11 East 17 Street, New York City, for the sum of $2.65, whereas the fair trade price for said item was $3.51. (See testimony of Marion Baehr, pp. 95–97; exhibit 11)

(j) *On January 19, 1962,* at approximately 11:20 A.M., one Herbert Schneider, a professional shopper employed by Ralph T. Piper, purchased a bottle of 100 MYADEC vitamin capsules from one Joseph Messiana, a clerk at the said store at 11 East 17 Street, New York City for the sum of $6.00, whereas the fair trade price for said item was $9.67. (See affidavit of Schneider, sworn to January 22, 1962; testimony of Schneider, pp. 32, 33, 34; Ex. 3)

8. It appears that immediate, substantial and irreparable harm to the good will of plaintiff and to the good will and business of the retailers who handle plaintiff's products now exists by reason of the acts of the defendants and is likely to continue.

9. The products manufactured and sold by plaintiff, including those above referred to, are in competition with products of a number of other pharmaceutical manufacturers, among them The Upjohn Company, E. R. Squibb Division of Olin Mathieson Chemical Company, and others.

10. "ABDEC" vitamin drops are in competition with Abbott's "Vi-Daylin," Upjohn's "Zymadrops," Mead Johnson's "Poly-Vi-Sol," Endo's "Vifort" and others; "MYADEC" vitamin capsules compete with Squibb's "Theregran," Upjohn's "Zymacaps" and others; "PALADAC" liquid vitamin preparation competes with Abbott's "Vi-Daylin" liquid, Endo's "Vifort" nectar, Lederle's "Vi-Tyke" syrup and others.

11. During the year 1961 and at the present time, the defendant, 11 Union Pharmacy, Inc., has been and now is engaged in the sale of merchandise at 11 East 17 Street, New York City.

12. The effect of price cutting by defendant 11 Union Pharmacy, Inc. results in other price cutting of similar products and as a result it appears that retailers must either meet the reduced prices or discontinue a valuable line of products.

13. On the outside of the premises at 11 East 17 Street, New York City, is a sign reading: "Amalgamated Health Drug Plan" and on the door are the words "11 Union Pharmacy Inc."

14. The employees at 11 East 17 Street, New York City, are under the supervision of 11 Union Pharmacy, Inc.

15. The exact name of defendant Amalgamated Health & Drug Plan, Inc. does not appear except, as aforesaid, on the outside in a large sign bearing the name "Amalgamated Health Drug Plan." The proof is insufficient upon this application to warrant the issue of a preliminary injunction against defendant Amalgamated Health & Drug Plan, Inc.

16. The facts are adequate to sustain the application of plaintiff for a preliminary injunction against defendant 11 Union Pharmacy, Inc.

## DISCUSSION

Joseph Messiana, a clerk employed by defendant 11 Union Pharmacy, Inc. was called by plaintiff. (SM 2–26) He testified that this defendant operated the drug store at 11 East 17 Street, which employed thirteen or fourteen persons. (SM 4) One Leonard Schneider manages the store. (SM 8) A large fluorescent sign in large letters reads, "Amalgamated Health & Drug Plan." (SM 9)

Messiana stated that he was familiar with MYADEC, ABDEC drops and PALADAC, plaintiff's products. He said that fair trade price of ABDEC drops, 50 cc., was about $3.51. (SM 13) He did not recall making a sale of ABDEC drops to Mary E. Burke. (SM 21) He denied selling MYADEC 100s for less than "nine dollars and change." (SM 24)

Defendants submitted an affidavit from Irwin Gottlieb, a registered pharmacist employed by 11 Union Pharmacy, Inc., who denied any sales below the fair trade price. Louis Wallash, another employee, swore to like facts. Joseph Messiana, the employee above mentioned, denied any sales below the fair trade price.

I am not inclined to accept all of Messiana's testimony or all of his affidavit as correct. I believe the other witnesses called by plaintiff. No witnesses were called by defendants.

Defendants' counsel objects to, among other things, (1) any injunction against defendant Amalgamated Health & Drug Plan, Inc., and (2) to a preliminary injunction enjoining the defendants from offering for sale or selling *all* of the products bearing plaintiff's trade marks or brand names.

As to the first objection, it appears to be sound. No involvement of defendant Amalgamated Health & Drug Plan, Inc., whatever that corporation is, has been shown.

As to the second objection, I must clearly disagree. The defendant 11 Union Pharmacy, Inc. has undoubtedly sold a number of orders of two certain items below the fair trade price. It is reasonable to suppose that other violations may be threatened. Injunctions may be issued to prevent future wrongs. Swift & Co. v. United States, 1928, 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587; Vaughan v. John C. Winston Co., 10 Cir. 1936, 83 F.2d 370, 373; Pierce v. Society of Sisters, 1925, 268 U.S. 510, 536, 45 S. Ct. 571, 69 L.Ed. 1070.

The affidavit of H. J. Schriever (sworn to December 11, 1961), Assistant Manager in Sales of Parke, Davis & Company, states:

"Pursuant to the McGuire Act and New York Fair Trade Law, Parke, Davis & Company has established its current fair trade structure in the State of New York. Many contracts have been negotiated with retailers which are and have been in continuous full force and effect. A specimen copy of a contract currently in effect is attached hereto as Exhibit '3'." (p. 6)

There has been no evidence that the plaintiff had entered into such contract with the defendant. However, General Business Law, § 369-b states:

"§ 369-b. Unfair competition defined and made actionable

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, *whether the person so advertising, offering for sale or selling is or is not a party to such contract,* is unfair competition and is actionable at the suit of any person damaged thereby." (Emphasis added)

See Calvert Distillers Corp. v. Nussbaum Liquor Store, Inc., Sup.Ct.N.Y.Co.1938, 166 Misc. 342, 2 N.Y.S.2d 320; Calvert Distillers Corporation v. Stockman, D.C. E.D.N.Y.1939, 26 F.Supp. 73; Miles Laboratories Inc. v. Family Bargain Ctr., Sup.Ct.Onondaga Co.1959, 18 Misc.2d 792, 186 N.Y.S.2d 372.

A letter with an attached container for a combination package of MYADEC was received by this court, dated February 23, 1962, from Robert Goldstein, attorney for the defendants. This letter, submitted *after* the hearing, is in effect a memorandum of law containing new factors in support of defendants' position. No application was made and no permission was granted by the court to submit this memorandum.

These new contentions do not affect my decision in this matter. It is stated in the letter that there was some statement pertaining to the fair trade laws in the complaint and other papers. Defendant asserts that "only testimony given from the witness stand and documentary proof actually received in evidence could be considered. Any other determination would be contrary to law." Enclosed in the letter was a container for MYADEC. Defendants point out that the container consists of a combination package, of a bottle of 100 cc. of vitamins with a free bottle of 30 cc. of MYADEC vitamins, both sold at a special price. Defendants contend that "as Parke Davis & Company cut its own prices by offering free merchandise, it could not come within the purview of any fair trade law." Attached to this letter was a New York Times article reporting a New Jersey decision, which defendants state "held that a concern selling a combined package abandoned its fairtrade prices by offering for sale its dual package at prices lower than the established fair trade price for each individual item."

Where the pleadings are properly verified, they may serve the office both of pleadings and evidence on an application for a temporary injunction. 43 C.J.S. Injunctions § 193; Abeles v. Friedman, Sup.Ct.N.Y.Co.1939, 171 Misc. 1042, 14 N.Y.S.2d 252; Cluett, Peabody & Co. v. Spetalnik, D.C.E.D.N.Y.1938, 29 F.Supp. 173; Hunter v. Atchison T. & S. F. Ry. Co., 7 Cir., 1951, 188 F.2d 294, cert. denied, Hunter v. Shepherd, 1951, 342 U.S. 819, 72 S.Ct. 36, 96 L.Ed. 619; Swinick v. Goldsmith, Sup.Ct.N.Y.Co.1955, 142 N.Y.S.2d 634; Hutson v. Bright, Sup.Ct. N.Y.Co.1956, 158 N.Y.S.2d 672.

Affidavits may be considered, and where they establish sufficient grounds for a temporary injunction they may justify its issuance. 43 C.J.S. Injunctions § 195; Utah Power & Light Co. v. Pfost, D.C.D.Idaho, 1931, 52 F.2d 226; Abeles v. Friedman, supra. However, in this case, affidavits have been supplemented by copious testimony.

■ The defendants have offered insufficient evidence to enable the court to determine the effect of this package under the Fair Trade Law. The court does not know when these packages were sold, where they were sold, under what conditions they were sold, or the price at which they were sold. However, it should be pointed out that in Eastman Kodak Co. v. Siegel, Sup.Ct.N.Y.Co.1956, 2 Misc.2d 966, 979, 150 N.Y.S.2d 99, 113, it was held that:

"While not necessary to this decision, the court notes its view that combination sales of identical or different fair traded products of the same manufacturer at less than the sum of the fair trade prices fixed for each individual item should be protectable under the Fair Trade Law."

The package in the above case involved some components trade-marked and fair traded by the plaintiff, some trade-marked by it but not individually fair traded, and some items trade-marked by others but not fair traded, and unmarked flashlamps. The court concluded that where the combination package consists of some different trade-marked products of the same manufacturer, not all of which are fair traded when sold separately, the manufacturer may not, as regards the package, have the protection afforded by the Fair Trade Laws. Protection was not afforded as to the above outfit, however, as to the action for an injunction against sales of certain of its products by a retailer, at less than their established fair trade resale prices, the manufacturer was entitled to judgment under the Fair Trade Law.

The Eastman case, supra, was modified and the appellate division held:

"Judgment unanimously modified by eliminating from the first decretal paragraph of the judgment appealed from that portion which excluded from the restraining provisions of the judgment 'any combination package which consists of some different trademarked products of the plaintiff's manufacture not all of which are fair traded when sold separately'.

The fact remains that the package involved, to wit: the Brownie Hawk-eye Flash Outfit, bears the label, trade-mark and brand name of the producer of the package and is listed as such in the company's Retailer Fair Trade Agreement as revised April 1, 1954—the sole condition necessary to render the statute applicable, Guerlain, Inc. v. F. W. Woolworth Co., 297 N.Y. 11, 74 N.E.2d 217. Section 369-a of the General Business Law permits agreements fair trading any commodity—defined by Section 369-d of said law as 'any subject of commerce'—which bears, or the label or content of which bears, the trade-mark, brand, or name of the producer and which is in fair and open competition with commodities of the same general class produced by others. Under such circumstances the plaintiff is entitled to the protection afforded by the General Business Law." Eastman Kodak Co. v. Siegel, 1st Dept.1956, 1 A.D.2d 1002–1003, 151 N.Y.S.2d 859.

### CONCLUSIONS OF LAW

1. By reason of the foregoing, it appears that the plaintiff is subjected to the probability of irreparable harm and, accordingly, is entitled to a preliminary injunction enjoining the defendant 11 Union Pharmacy, Inc., its agents, attorneys, employees, servants, representatives and any and all persons acting by or under their authority from advertising, offering for sale or selling at retail merchandise bearing the plaintiff's trademarks or brand names for prices less than those stipulated in plaintiff's fair trade contracts and current supplements thereto in effect with retailers in the State of New York.

2. The application for a preliminary injunction against Amalgamated Health & Drug Plan, Inc. must be denied.

3. Plaintiff's motion is granted to the extent indicated.

This opinion contains the Findings of Fact and Conclusions of Law required by

Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Plaintiff is to furnish security in the amount of $5,000.00.

Settle order on notice in accordance with Rule 65(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A.