[L. A. No. 17877.   In Bank.   Apr. 28, 1942.]

FOOD AND GROCERY BUREAU OF SOUTHERN CALIFORNIA INCORPORATED (a Corporation), Respondent, v. HAROLD B. GARFIELD, Appellant.

Desser & Rau for Appellant.

Cupp, Hunt & Henderson, Cupp & Cupp, J. Wesley Cupp and Marvin Freeman for Respondent.

EDMONDS, J.—The Food and Grocery Bureau of Southern California, a trade association, brought an action against the appellant, who is the proprietor of nine retail drug stores, to enjoin him from issuing trading stamps to his customers. The appeal is from an order granting a preliminary injunction. Pending a determination of the respective rights of the parties, this court issued a writ of supersedeas. (*Food and Grocery Bureau v. Garfield*, 18 Cal. (2d) 174 [114 P. (2d) 579].)

The complaint includes three causes of action. By the first, it is alleged that the appellant, in addition to handling the usual articles offered for sale in a drug store, stocks many articles customarily sold by retail grocery stores, including cigars, candy, chewing gum, matches, toothpicks and can openers; that in each of the trade areas in which one of the appellant's stores is located, there are retail drug stores and food and grocery stores and markets which are operated in competition with the appellant's business. Since 1932 the appellant has conducted what he terms the "Mid-City Drug Profit Sharing Stamp Plan" whereby "Cash Discount" trading stamps are issued with purchases. These stamps, the association charges, have a cash value of two mills, one stamp being given with each ten-cent purchase, except on "Double Stamp Days" when two stamps are given with each such purchase. When presented in aggregate amounts of $50 face value, the stamps are redeemable for $1.00 in cash or $1.25 in merchandise.

Other allegations of the complaint are that the appellant widely advertises his stamp plan and, as a result, he has induced many persons who had not been his customers to make purchases of merchandise at his stores. Indeed, the appellant's practice of giving stamps was adopted by him for the purpose of injuring competitors and destroying competition in the various areas in which his stores are located, and as a direct and proximate result of this practice, several of the appellant's competitors have been injured.

In the second count, the association charges that the appellant is using the "Multiple Dividend Plan" for the purpose of stimulating trade. By the last count, the appellant is said to be selling merchandise below cost for the purpose of destroying competition.

Upon the filing of this complaint and a supporting affidavit, the superior court issued a temporary restraining order and an order to show cause why a preliminary injunction should not be granted. Upon the return day, the court considered the verified pleadings and the affidavits filed by the respective parties and made the order which is now under attack. However, as the second cause of action was dismissed by the association before the court made its determination and the order does not refer to any of the acts specified in the third cause of action, the question for decision concerns only the validity of the preliminary injunction insofar as it prohibits the use of trading stamps in the manner specified by the complaint.

By the appellant's answer, which was before the superior court at the time it made the order appealed from, he denies that he is a competitor of any of the retail food and grocery stores referred to in the complaint. He asserts that his cash discount or trading stamp plan is a reasonable business method for the purpose of inducing cash purchases by patrons, and that the plan is not used for the purpose of injuring competitors or destroying competition. More specifically, he denies that his use of these stamps has caused any of the trade of his competitors to be diverted to him.

As an affirmative defense, the answer alleges that the appellant has built up a large and valuable customer good will by his trading stamp system; that his competitors were and are using various competitive merchandising plans and giving concessions and articles of value to their customers which were countenanced by respondent; and that the respondent's laches is a bar to the action.

With its verified complaint, the respondent filed the affidavit of G. M. Stanton in which the affiant stated that he had received trading stamps with merchandise purchases at each of several of the appellant's stores. Subsequently, the respondent filed the affidavit of Harold Smith, the owner of a drug store near one of those operated by the appellant, in which he avers that the appellant's trading stamp plan has injured his business. According to his affidavit, Smith believes that some of his former customers are patronizing the appellant's store in order to obtain trading stamps.

In opposition to the demand for a preliminary injunction, the appellant filed affidavits in which he stated that he has used trading stamps for more than eight years; that his plan is a system for giving cash discounts to patrons for the purpose of inducing cash purchases and as an advertising medium; that he had ascertained from several of the persons mentioned in the complaint that the use of their names as injured competitors was not authorized by them; that in all localities where his stores are located there are other drug stores and food markets, all of which give premiums, redeemable coupons and other merchandise for value; and that the respondent had not proceeded against any of these competitors.

The appellant attacks the order granting a preliminary injunction as an abuse of discretion, contending that the issuance of trading stamps does not constitute the giving away of a product for the purpose of injuring competitors or destroy-

ing competition within the meaning of section 3 of the Unfair Practices Act (Stats. 1935, p. 1546, as amended; Deering's Gen. Laws, Act 8781). He maintains that he issues stamps, not as a gift, but either as an advertising feature or as a cash discount given in consideration of the immediate payment of cash by the individual customer.

But assuming they do amount to a gift, he asserts, the complaint and the accompanying affidavits are nevertheless insufficient to charge a violation of the statute since they fail to show that his trading stamp plan was either adopted or conducted with the intent to injure competitors or destroy competition. And in this regard he challenges as both inapplicable and unconstitutional the presumption of such intent found in section 5 of the act which reads: "In all actions brought under the provisions of this act proof of one or more acts of selling or giving away any article or product below cost or at discriminatory prices, together with proof of the injurious effect of such acts, shall be presumptive evidence of the purpose and intent to injure competitors or destroy competition." The appellant further contends that, in any event, the trial court abused its discretion in granting the preliminary injunction, since the facts stated in the complaint, the answer and the supporting affidavits show no damage or threat of damage to the respondent or its members by the continued operation of his stamp plan, but, on the other hand, reveal that great damage will result to him should his present operations be prohibited. He also insists that the respondent has been guilty of laches and is estopped to maintain the action, since the undisputed facts clearly show that for eight years it voiced no disapproval of his plan and also has acquiesced without objection in the practice of other retail drug stores in the vicinity of giving concessions and things of value to their customers.

The respondent denies that the appellant's trading stamps are issued as cash discounts. It contends that the scheme involves the making of a gift, the object of which is to induce persons to patronize his stores. Asserting that the complaint and affidavits in support thereof are entirely sufficient to show an intent upon the part of the appellant to injure competitors through the operation of his stamp plan, the association relies upon the presumption of intent, included in the statute as both applicable and constitutional. With respect to the argument of laches and estoppel, the respondent urges that it has

not delayed unreasonably in bringing the action, nor has the appellant suffered any prejudice by the delay.

The appellant does not contend that the legislature is without power constitutionally to prohibit the issuance and use of trading stamps, and it may be noted, the United States Supreme Court has sustained the validity of anti-trading stamp legislation. (*Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342 [36 S. Ct. 370, 60 L. Ed. 679] ; *Tanner* v. *Little*, 240 U. S. 369 [36 S. Ct. 379, 60 L. Ed. 691] ; *Pitney* v. *Washington*, 240 U. S. 387 [36 S. Ct. 385, 60 L. Ed. 703].) But he asserts that the issuance of trading stamps, at least in the manner adopted by him, is not embraced within the prohibitive ban of section 3 of the Unfair Practices Act, reading as follows: "It shall be unlawful for any person engaged in business within this State, to sell any article or product at less than the cost thereof to the vendor, or give away any product, for the purpose of injuring competitors or destroying competition. . . ."

Concededly, the Unfair Practices Act, *supra,* makes no reference to trading stamps. To support the respondent's position, therefore, it must show either that the plan conducted by the appellant amounts to the giving away of a product for the purpose of injuring competitors or destroying competition, or that by his method of doing business he sells products below cost. But the association does not assert that the appellant's issuance of trading stamps resulted in the sale of any commodities below cost, and the affidavits filed by it do not include any facts indicating that sales below cost were accomplished by the use of stamps. Of interest in this connection, is the written opinion of the trial judge, presented in the respondent's brief, which discloses beyond question that the order granting the preliminary injunction was based solely upon the theory that the stamp plan constituted the making of a gift of a product with the intent to destroy competition.

It is well settled by the decisions of this court, as well as those in other jurisdictions, that the practice of merchants in issuing trading stamps with the purchase of articles is merely a method of discounting bills in consideration for the immediate payment of cash. (*Ex parte Drexel,* 147 Cal. 763 [82 Pac. 429, 3 Ann. Cas. 878, 2 L. R. A. (N.S.) 588] ; *Ex parte West,* 147 Cal. 774 [82 Pac. 434] ; *Ex parte Hutchinson,* 137 Fed. 950; *Sperry & Hutchinson Co.* v. *Temple,* 137 Fed. 992; *Lawton* v. *Stewart Dry Goods Co.,* 197 Ky. 394 [247 S. W. 14, 26 A. L. R. 686] ; *Hewin* v. *City of Atlanta,* 121 Ga. 723 [49 S. E. 765, 2 Ann. Cas. 296, 67 L. R. A. 795] ; *Sperry*

& *Hutchinson Co.* v. *McBride*, 307 Mass. 408 [30 N. E. (2d) 269]; *Winston* v. *Beeson*, 135 N. C. 271 [47 S. E. 457, 65 L. R. A. 167]; *State* v. *Lothrops-Farnham Co.*, 84 N. H. 322 [150 Atl. 551]; *State* v. *Holtgreve*, 58 Utah 563 [200 Pac. 894, 26 A. L. R. 696].) The respondent impliedly concedes that a cash discount is not a gift, which is a transfer of property without consideration, but it argues that the appellant's plan is not a true cash discount.

In the first place, the respondent asserts, the record is devoid of any allegation by the appellant that he does any credit business, and it follows, therefore, that since all of his customers pay cash, he cannot by means of trading stamps be said to be inducing any of them to pay cash rather than to buy on credit. This argument is fallacious. The fact that the appellant conducts his business on an all-cash basis does not preclude him from giving a cash discount. On the contrary, the cash discount is even more vital to the all-cash store than to the cash and credit store because the proprietor of the former has staked his entire enterprise upon the ability to attract cash trade and has been willing to forego the patronage of those consumers who buy their goods upon credit.

The respondent next contends that the appellant's trading stamps are given only to those customers who ask for them, and a bona fide cash discount in commercial practice is given to all purchasers meeting the cash payment condition. It is apparent, however, that the plan does not lose its character as a cash discount merely because certain purchasers do not take advantage of the offer and request stamps.

The plan is also attacked by the respondent as not being a cash discount because the customer cannot redeem the stamps until he has accumulated 500 of them. If the appellant were in fact making cash discounts by means of trading stamps, says the association, he would redeem the stamps when the amount evidenced thereby equaled the value of one cent, and on a fifty-cent cash sale would accept only forty-nine cents in payment. Substantially the same plan was upheld by this court in *Ex parte Drexel, supra,* as a method of allowing discounts on cash payments.

The respondent also complains because the appellant has "double stamp days" on which he issues to the customer twice the usual number of trading stamps. Bona fide cash discounts are not arbitrarily doubled on certain days, it is contended. But a trading stamp may retain its character as a cash

discount even though the number given by the merchant is increased on a particular day.

Finally, the respondent urges, the appellant advertises his stamp as "free," and this circumstance, it is maintained, is inconsistent with a legitimate cash discount plan. But the advertisement upon which this claim is made shows that the stamps are given "free" only upon the making of a ten-cent purchase from the appellant. The purchase is the prerequisite to obtaining the stamp and furnishes the consideration for the distribution of stamps to those customers asking for them.

It must be concluded, therefore, that the trading stamp plan adopted by the appellant does not constitute the making of a gift of $1.00 in cash or $1.25 in merchandise but is a discount given the customer in consideration of his paying cash.

Since the stamp is not the gift of a product within the meaning of section 3 of the act, it is immaterial that the appellant may have had an intent to injure competitors or destroy competition by its issuance. Only in the event that the issuance of the stamp resulted in the sale of the article or articles with which it was purchased could the plan be held a violation of section 3. And since neither the complaint nor the affidavits charge that by the use of trading stamps the appellant is selling merchandise below cost in violation of the Unfair Practices Act, *supra*, the order appealed from must be reversed.

It is so ordered.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.