[Civ. No. 13779.   Second Dist., Div. Two.   Nov. 27, 1942.]

WECO PRODUCTS COMPANY (a Corporation), Respondent, v. MID-CITY CUT RATE DRUG STORES (a Partnership) et al., Defendants; HAROLD B. GARFIELD, Appellant.

Desser & Rau, Chase, Barnes & Chase and Charles G. Smith for Appellant.

Landels, Weigel & Crocker, Jennings & Belcher, Stanley A. Weigel and Ralph N. Kleps for Respondent.

GOULD, J. pro tem.—In this action plaintiff, manufacturer of toothbrushes and other toilet articles, sought to enjoin defendant, retail druggist, from giving "trading stamps" with plaintiff's trade-marked commodities when such articles were sold at the minimum prices stipulated by plaintiff under the

California Fair Trade Act. It was claimed that by so giving trading stamps the retailer in effect sold the commodities at less than the minimum stipulated prices. Plaintiff prevailed and defendant appeals.

Enacted in 1931 and subsequently amended in 1933 and 1937, the Fair Trade Act is now codified as division 7, part 2, chapter 3, sections 16900-16905 of the Business and Professions Code (Stats. 1941, ch. 526). Fundamentally it seeks to preserve to a producer or manufacturer the good will or business asset represented by his trade-mark or brand. To that end it authorizes a producer to contract with retailers requiring them to maintain resale prices on the producer's trade-marked commodities, and, in furtherance of the same right of protection of the property right symbolized by a trade-mark or brand, confers upon the producer the right to enforce the maintenance of such prices against all retailers, whether or not they have signed contracts to that effect with the producer.

Provisions of the act here involved have been upheld as constitutional by the California Supreme Court (*Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446 [55 P.2d 177]; *Pyroil Sales* v. *The Pep Boys,* 5 Cal.2d 784 [55 P.2d 194]); and the Supreme Court of the United States in *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corporation,* 299 U.S. 183 [57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476], has sustained the validity of almost identical clauses contained in the Illinois Fair Trade Act. The United States Supreme Court, in the volume cited at page 198, also has affirmed the decrees of the California Supreme Court in the Max Factor and Pyroil Sales cases, *supra.* Decisions are myriad that the statutory protection afforded by such Fair Trade Acts is a constitutional exercise of the legislative power and in conformity with the right reposing in the legislatures of the several states. Acts similar to the one here involved have been adopted and are now in force in nearly all of the states.

In fact no attack is made here upon the fundamental legal principles involved in the Fair Trade Act. Nor is there any material dispute as to the factual situation in the present case. With only minor and unimportant discrepancies, the parties are in agreement in this regard.

Plaintiff is manufacturer and distributor of certain toilet

articles bearing long established trade names and brands, widely advertised, of standard quality and enjoying nation-wide sale in fair and open competition with commodities of the same class produced by others, and has for many years acted under the California Fair Trade Act by entering into uniform written contracts with hundreds of dealers, fixing minimum price schedules for its commodities. Such prices, by the terms of the contracts, might be changed at any time upon notice by plaintiff, and it is agreed that changes made were upon timely notice mailed to all retailers in the state handling plaintiff's products.

Defendant, operator and owner of a chain of drug stores in the city of Los Angeles, did not sign or execute a written agreement with plaintiff. He did, however, receive such contract, received notice of all changes in price and at all times knew of his obligation under the Fair Trade Act to maintain the minimum price schedule as fixed by plaintiff.

And in fact he did maintain such schedule, unless it can be said that the giving of trading stamps by defendant, as hereinafter detailed, may be said to be an infraction of the price schedule.

Defendant, even antedating plaintiff's availing itself of the protection of the Fair Trade Act, regularly gave to his customers trading stamps at the rate of one stamp with each ten cents of the sale price of articles purchased. These were given on purchases of any of the thousand and one things sold in defendant's drug stores, with the exception of liquors. At infrequent intervals there were ''double stamp days,'' when two stamps were given for each ten cents of sale price. Upon each stamp was imprinted ''Cash Discount Stamp.'' Each stamp had a cash value of two mills. Stamps were given to every customer paying cash at the time of purchase and requesting trading stamps. They were redeemed by defendant upon presentation of five hundred stamps collected in a book given by defendant to customers for that purpose, redemption value for a book of five hundred being $1.00 cash or, at the option of the purchaser, $1.25 merchandise.

Inasmuch as trading stamps were given by defendant upon sales of plaintiff's commodities, plaintiff contends that the scheduled minimum prices of his commodities were reduced by exactly the amount of the cash value of the stamps, to wit, by two mills upon each ten cents. In other words, plaintiff

insists that the giving of trading stamps was in reality a disguised form of price cutting.

The question before us for consideration, therefore, may be stated as follows: Does the giving of trading stamps, redeemable for cash or merchandise, constitute a violation of the Fair Trade Act when such stamps are given with commodities sold at the minimum prices stipulated by the producer under said act? This query is best answered, we believe, by a consideration of the nature and purpose of the trading stamp coupons. Are they to be regarded as a discount for cash, as a means of advertising, a device to entice customers and to retain their trade, or do they simply represent a cut in the sale price of the articles with which they are given? If the latter, they accomplish a cut in the established price of merchandise; and where such merchandise is sold at minimum Fair Trade Act prices, the giving of trading stamps then amounts to a sale below such prices.

If, however, the stamps are given by the merchant in the nature of an inducement to customers to attract them to his store, the practice is in the nature of an advertising device, and is no more to be condemned as violative of the Fair Trade Act than would be such commonly employed devices as free parking room, care of infants and other plans offered by some mercantile establishments in competition with their rivals. Free parking for automobiles of customers might be said to result in a lesser price paid by a customer for goods purchased, yet it could hardly be reasonably contended that thereby a violation of the Fair Trade Act had been worked.

Neither can it be asserted that by giving discounts for cash the terms of the statute in question are contravened. A cash discount is a reward for prompt payment. It is a trade practice long established, and is authoritatively recognized as being not a deduction from the purchase price. (Montgomery, Auditing Theory and Practice, pp. 499-500.)

Consideration of such authorities as are available leads us to the conclusion that the giving of trading stamps as in the instance now before us does not effect a reduction in the price of the articles sold such as to constitute a violation of the Fair Trade Act. The matter has not been passed upon by the appellate courts of this state. However, aside from the consideration of the Fair Trade Act, the status of trading

stamps is definitely fixed in this state as being a discount "for the immediate payment of cash." This pronouncement finds its latest expression in the case of *Food and Grocery Bureau* v. *Garfield,* 20 Cal.2d 228 [125 P.2d 3], decided April 28, 1942, where the defendant is the same as in the instant case and where the very trading stamps here involved were under consideration. It is true that the Food and Grocery Bureau case involved a different statute, the Unfair Practices Act rather than the Fair Trade Act, but the ruling of the court must be regarded as conclusive of the status of the trading stamp in commercial retail business.

"It must be concluded," says the court in the Unfair Practices Act case, "that the trading stamp plan adopted by appellant . . . is a discount given the customer in consideration of his paying cash." And at page 253: "It is well settled by the decisions of this court, as well as those in other jurisdictions, that the practice of merchants in issuing trading stamps with the purchase of articles is merely a method of discounting bills in consideration for the immediate payment of cash."

This latter pronouncement is buttressed by numerous citations to decisions in California and other jurisdictions, where trading stamps are characterized as "merely one way of discounting bills in consideration for the immediate payment of cash," *Ex parte Hutchinson,* 137 F. 950; "a benefit to the customer, who practically receives a discount and who will buy more cautiously and judiciously if he pays cash," *Winston* v. *Beeson,* 135 N.C. 271 [47 S.E. 457, 65 L.R.A. 167], and "a convenient means of allowing or granting a discount to the merchant's customers on small as well as on large purchases which were paid for in cash," *State* v. *Holtgreve,* 58 Utah 563 [200 P. 894, 26 A.L.R. 696].

To denominate appellant's trading stamp plan as a device for giving a discount for cash payment on merchandise, rather than as a cut in price upon the articles sold, gains force when we consider that the stamps are given uniformly and without regard to the type of goods sold or the purchaser of the same. The only condition is that cash be paid for the purchases. Respondent's "Fair Trade" minimum-priced articles are not singled out by appellant as objects to which alone the trading stamp privileges attach. No discrimination is

made for or against them. The policy may be said to be of uniform application both as to goods sold and as to purchasers of the same, and logically falls into the classification of "cash discount" rather than "price cut."

Although California courts have not yet passed upon the point involved in this appeal, almost precisely the same matter was before the Supreme Court of Pennsylvania in the case of *Bristol-Myers Co. v. Lit Brothers, Inc.,* 336 Pa. 81 [6 A.2d 843]. With only minor and immaterial factual differences between the case now before us and that involved in the Lit case, the Pennsylvania court had squarely presented to it the question as to whether the giving of trading stamps amounted to a violation of the Fair Trade Act. To come within the prohibitions of the act, ruled the Pennsylvania court, there would have to be a direct cut in the price of commodities protected by the act, or the accomplishment of the same result by subterfuge in circumvention of the law.

"What Lit Brothers did in this matter is neither a direct price-cutting of certain commodities nor is it a palpable subterfuge to conceal a law evasion," says the Pennsylvania court. Remarking that "the issuing of trading stamps is and long has been a legitimate means of attracting customers to the store issuing them," the court found nothing in the Fair Trade Act indicating that its provisions were intended to prevent the practice and accordingly affirmed the lower court's decree dismissing the action seeking to enjoin the retailer from issuing stamps in alleged violation of the Fair Trade Act.

Our conclusion with reference to the main point at issue renders it unnecessary to treat questions of laches, estoppel and abandonment raised by appellant and discussed at length in the briefs.

The judgment is reversed.

Moore, P. J., and McComb, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 25, 1943. Curtis, J., voted for a hearing.