BRISTOL-MYERS COMPANY, Appellant, *v.* IRVING PICKER et al., Copartners Doing Business under the Name of PICKER PHARMACY, Respondents.

Argued October 18, 1950; decided November 30, 1950.

*Gilbert H. Weil* and *Isaac W. Digges* for appellant. I. Respondents violate appellant's fair trade prices when they sell appellant's products fair-traded at $10.25 for only $10. Similarly, they violate appellant's fair trade rights when they deliver to their customers, in exchange for the fair trade price of appellant's products, not only the products themselves but also cash receipts which have a redemption value in respondents' store and elsewhere of $2\frac{1}{2}\%$ of the fair trade prices. II. Respondents' underselling of appellant's fair trade prices does not come within any of the exceptions to the Fair Trade Law cited in subdivision 2 of section 369-a of the General Business Law and is therefore a violation of that law. (*Weco Products Co.* v. *Mid-City Cut Rate Drug Stores,* 55 Cal. App. 2d 684;

*Bristol-Myers Co.* v. *Lit Bros., Inc.*, 336 Pa. 81; *Guerlain, Inc.*, v. *Woolworth Co.*, 297 N. Y. 11; *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342.) III. The motive with which the price cutting is done is immaterial. (*Weco Products Co.* v. *Mid-City Cut Rate Drug Stores*, 55 Cal. App. 2d 684; *Bristol-Myers Co.* v. *Lit Bros., Inc.*, 336 Pa. 81; *Food & Grocery Bureau* v. *Garfield*, 20 Cal. 2d 228.) IV. Cases declaring statutes to be unconstitutional which outlaw trading stamps have no application here.

*Charles Green Smith, Frances Kneitel, William S. Beinecke* and *Constantine Mittendorf* for respondents. I. Cash register receipts are similar in principle to trading stamps. (*Benjamin* v. *Palan Drug Co.*, 275 App. Div. 1036; *Nechamkin* v. *Picker*, 189 Misc. 61.) II. Trading stamps have been universally recognized as a means of affording retail cash customers a discount for the payment of cash. (*Winston* v. *Beeson*, 135 N. C. 271; *Ware* v. *Sperry & Hutchinson Co.*, 197 Ky. 394; *State* v. *Holtgreve*, 58 Utah 563; *Ex parte Drexel*, 147 Cal. 763; *Sperry & Hutchinson Co.* v. *Siegel Cooper & Co.*, 225 Ill. App. 540, 309 Ill. 193.) III. The use of a cash discount system in connection with the retail sale of articles at fair trade minimum prices does not reduce prices and does not violate the Fair Trade Law. (*Bristol-Myers Co.* v. *Lit Bros., Inc.*, 336 Pa. 81; *Food & Grocery Bureau* v. *Garfield*, 20 Cal. 2d 228; *Weco Products Co.* v. *Mid-City Cut Rate Drug Stores*, 55 Cal. App. 2d 684; *Benjamin* v. *Palan Drug Co.*, 194 Misc. 879, 275 App. Div. 1036.) IV. If the New York Fair Trade Act be construed to prohibit cash discounts on retail sales of minimum priced articles, it is unconstitutional in that it violates the Fourteenth Amendment to the Federal Constitution and section 6 of article I of the State Constitution. (*Old Dearborn Distr. Co.* v. *Seagram-Distillers Corp.*, 299 U. S. 183; *Doubleday, Doran & Co.* v. *Macy & Co.*, 269 N. Y. 272; *Guerlain, Inc.*, v. *Woolworth Co.*, 297 N. Y. 11; *Sperry & Hutchinson Co.* v. *McBride*, 307 Mass. 408.)

FROESSEL, J. This appeal presents to us a merchandising plan originated and extended by defendants-respondents, the legality of which we are to determine in the light of article XXIV-A of the General Business Law, more commonly referred to as the Fair Trade Law.

Plaintiff-appellant is a manufacturer and distributor of well-known drug products and cosmetic articles which it sells under distinctive trade-marks. It has expended large sums of money advertising and selling its trade-marked products, and has established a valuable reputation and good will for them. To protect that good will it has established minimum retail prices for its products, pursuant to sections 369-a to 369-e of the General Business Law, and fulfilled all the requisites to their fair trading. Defendants had not themselves entered into any fair trade contract with plaintiff, but knew of the existence of said agreements and the minimum resale prices stipulated therein.

Defendants operate a retail drugstore as copartners in Lynbrook, Nassau County, New York, where they sell, among other things, appellant's products. They originated the merchandising plan in question prior to the passage of the Fair Trade Law, and some thirteen or fourteen years prior to the time of the trial, which took place in 1948. Cash register receipts, which were originally redeemed in specified articles of merchandise (called " presents and gifts "), were later redeemed in trade from defendants' merchandise, whether fair-traded or not, at the rate of 2½% of cash purchases (no others are made), when they aggregated $10 or more.

As a result of the alleged competition offered by department stores in surrounding communities (not Lynbrook proper), defendant and fourteen other merchants in their area formed a " Dividend Club " in 1947. Defendants' plan was thereupon extended to these other stores, so that each member redeemed his own receipts as well as those issued by any other member, and monthly adjustments were made. The customer, upon accumulating $10 worth of the receipts from any of these stores, could then redeem them therein, at a value of twenty-five cents, in merchandise, whether fair-traded or not, ranging through children's wearing apparel; coats, suits, dresses; curtains and draperies; drugs and cosmetics; fruits and vegetables; gifts and greeting cards; gasoline, oil and filling station services; hardware and appliances; jewelry; ladies' specialties; meats; men's haberdashery; occasional furniture and lamps; rugs and linoleum; stockings and sportswear.

Section 369-a of the General Business Law provides for price-fixing of certain commodities, excluding from its operation, however, several situations unrelated to this case (§ 369-a, subds. 2, 3; § 369-c). Section 369-b provides as follows: "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

Simply stated, we are to determine whether the issuance of cash register receipts in accordance with the foregoing plan, redeemable in merchandise at 2½% of the purchase price, in conjunction with the sale of plaintiff's fair-traded products, constitutes price cutting, and, if so, is such price cutting the unfair competition contemplated by the Fair Trade Law. Special Term adopted the view that defendants' practice amounted to price cutting in violation of the law; the Appellate Division adopted the contrary view. We have not passed upon this situation before.

Much of the resale price maintenance legislation appears to have been stimulated by the decision in *Schechter Poultry Corp.* v. *United States* (295 U. S. 495 [1935]). Considerable discussion and controversy have ensued over the economic implications of such laws, which are now in force in most of the States of the Union. The Miller-Tydings Enabling Act has removed from the interdict of the Federal anti-trust and unfair competition laws resale price maintenance agreements which are valid in the State of resale (U. S. Code, tit. 15, § 1). Our statute was copied after its California prototype, which was aimed principally at the vicious "loss leader" type of competition prevalent in the mid-thirties. (See Shulman, The Fair Trade Acts and the Law of Restrictive Agreements Affecting Chattels, 49 Yale L. J. 607, 613–616.)

In any event, the validity of the statutes as against constitutional objections is founded upon the protection which they are deemed to afford the manufacturer as the owner of the brand name of trade-marked merchandise (*Bourjois Sales Corp.* v. *Dorfman*, 273 N. Y. 167; *Old Dearborn Distr. Co.* v.

*Seagram-Distillers Corp.*, 299 U. S. 183). Accordingly, a manufacturer, such as plaintiff, would seem to possess the prime right to enforce the minimum price set by it, and the statute extends its protective provisions to encompass persons who are not parties to the resale maintenance agreements, so that such enforcement may be had against a nonsignatory retailer (General Business Law, § 369-b; *Port Chester Wine & Liquor Shop* v. *Miller Bros.*, 281 N. Y. 101).

Plaintiff claims that defendants violate the former's fair trade rights when they deliver to their customers, in exchange for the fair trade price of plaintiff's products, not only the products themselves, but also cash receipts which have a redemption value in defendants' store and elsewhere of 2½% of the fair trade prices. Defendants, on the other hand, maintain that the system employed by them is a legitimate competitive method. Defendants further contend that if our Fair Trade Law be construed to prohibit cash discounts on retail sales of minimum priced articles, it violates the Fourteenth Amendment to the Constitution of the United States and section 6 of article I of our State Constitution.

In support of their contention that there is no violation of the Fair Trade Law defendants cite from two other jurisdictions: *Bristol-Myers Co.* v. *Lit Bros., Inc.* (336 Pa. 81 [two judges dissenting]) ; *Food & Grocery Bureau* v. *Garfield* (20 Cal. 2d 228); *Weco Products Co.* v. *Mid-City Cut Rate Drug Stores* (55 Cal. App. 2d 684 [hearing denied — one judge dissenting]). The rationale of these decisions, which were concerned with " trading stamps " and not cash register receipts, appears to be that the seller's motive was not to cut the price but rather an advertising device to attract customers or to reward cash payments, and that in any event the rule *de minimis non curat lex* applies. The difficulty with these views is that the situation here presented is not among the several excluded by the Legislature from the operation of the statute. As to motive, defendants' counsel at the trial frankly conceded: " Obviously, if it violates the Fair Trade Law, it does not matter what its purpose was." Of course the plan challenged is an advertising lure, and cash discounts are " an inducement to customers to attract them to his store " (*Weco Products Co.* v. *Mid-City Cut Rate Drug Stores, supra,* p. 687), but so is any violation of the Fair Trade

Laws. The greater the discount or price cut, the greater the lure. By allowing a breach, no matter how small, we invite the flood, and unless the Legislature decrees the exception, we are powerless to allow it.

Considered as a method of advertising, the challenged scheme must be differentiated from types of service such as free parking, self-service, care of infants, entertainment, free delivery and the like, with which we are not presently concerned. These other types of service have no direct relation to the article purchased or the price paid. They are completely separated and too remote from the pricing element to come within the statute's prohibition. Here the benefit to the customer is directly, proportionately, inseparably and specifically *related to the article purchased and its price.*

Assuming that there is no essential difference between the use of trading stamps and cash register receipts which are redeemable, and that either may be regarded as a form of cash discount, I nevertheless cannot agree with the opinions in the cases cited that such a discount does not cut the sale price of an article. No matter how one puts it, the consumer who is accorded a cash discount in reality pays that much less for the article which he purchases, and this is none the less true because the return is by way of merchandise rather than coin which may purchase merchandise. When defendants sold plaintiff's products at fair trade prices, and as a part of the same transaction gave their customers cash register receipts having a redemption value of 2½% of such fair trade prices, they, in effect, sold plaintiff's products at 2½% less than the prices fixed. I can see no distinction between returning to the customer a credit memorandum of 2½% and giving him a cash register receipt. And whether the discount is small or large makes no difference — the statute forbids both.

Defendants here agree that if the customer purchased $10 worth of plaintiff's products, he would immediately receive, on request and for nothing, any fair-traded article he desired and which was priced at twenty-five cents. If a retailer may allow 2½% under the statute, a competitor may follow the same plan but instead allow 5%, inviting retaliation with an even greater allowance. Where may it end? The same

cutthroat competition sought to be avoided by the Fair Trade Law could thus be revived under the so-called cash discount system.

The argument that the giving of a cash discount is an accepted form of doing business on the retail level, and for that reason constitutes an implied exception to the statute, is without weight, for prior to the passage of the Fair Trade Law it was also an accepted form of business for a merchant to sell at any price he chose; it is those very practices that the act sought to interdict. It should be noted in passing that there is no evidence in this record of any custom or practice of giving cash discounts among retailers, although it is common knowledge that such is a customary practice as between wholesalers and retailers. In any event, the Legislature has not sanctioned such discounts in the Fair Trade Law. It could well have provided for this exception as it has others (General Business Law, § 369-a, subds. 2, 3; § 369-c), and as it has in the Alcoholic Beverage Control Law (§ 101-b, subd. 2, par. [b]), which expressly permits a discount of 1% to the retailer for prompt payment. It has not done so, and we are not authorized to read such an exception into the Fair Trade Law.

While we have not passed upon the question here presented, the Appellate Divisions in the First and Second Departments have done so. In *Palmer* v. *Angert* (275 App. Div. 965), the Appellate Division, Second Department, held that the practice of redeeming cash register receipts is a price cutting device. In the First Department, the court arrived at the contrary conclusion in *Benjamin* v. *Palan Drug Co.* (275 App. Div. 1036), involving trading stamps, but wrote no opinion. And when the instant case came before it, again no opinion was written, but it merely reversed Special Term and cited the *Benjamin* case. However, the basis for its reversal is indicated by its eleventh finding of fact contained in the order of reversal, the first portion of which reads as follows: " Allowance of said cash discounts has not reduced the minimum resale price of any commodity ". As hereinbefore indicated, I cannot agree that $10.25 equals $10; the defendants' plan, however, designated, in effect, simply reduced the minimum resale price by 2½%.

As to the remaining portion of said finding, namely, that the allowance of such discounts " has not injured the goodwill value of any article of plaintiff's merchandise ", I am of the opinion that the Appellate Division also clearly erred. The Fair Trade Law unqualifiedly provides that price cutting fair trade articles in and of itself is unfair competition. We have heretofore recognized that the primary legislative aim is to protect the good will of the trade-mark owner, and that when a commodity which bears a brand name is resold for less than the minimum price specified in the fair trade contracts, " such conduct " is a " violation " of the plain mandate of the Fair Trade Act, and " is properly restrained by injunctive relief " (*Guerlain, Inc.*, v. *Woolworth Co.*, 297 N. Y. 11, 17, 19). As was said in *Old Dearborn Distr. Co.* v. *Seagram-Distillers Corp.* (*supra*, p. 195) " the act does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates ' unfair competition.' "

The " assault upon the good will " is the injury or damage resulting from the unfair competition, and is actionable under the statute even though proof of specific money damages is not supplied; in other words, injury to good will, actual or threatened, lies at its base. In *Westcott Chuck Co.* v. *Oneida Nat. Chuck Co.* (199 N. Y. 247, 251) in an action to restrain unfair competition, we said in effect that even in an action at law proof of actual damage is necessary only to justify more than a nominal recovery. But this is an action in equity and does not require a showing of specific money damage to support an injunction (*Calvert Distillers Corp.* v. *Nussbaum Liquor Store*, 166 Misc. 342, 347; *Saxlehner* v. *Siegel-Cooper Co.*, 179 U. S. 42; *Champion Spark Plug Co.* v. *Sanders*, 331 U. S. 125, 131; *Straus* v. *Notaseme Hosiery Co.*, 240 U. S. 179; 2 Nims, Unfair Competition and Trade-Marks [4th ed.], p. 1381; 52 Harv. L. Rev. 293). To hold otherwise would defeat the purpose of the statute. Insofar, therefore, as it involves an

issue of fact, we are authorized to reverse Appellate Division finding number eleven, and to reinstate the findings of the trial court reversed by the Appellate Division (Civ. Prac. Act, § 605).

In summary, then, plaintiff has fully sustained the burden of proof. We are all agreed that cash register receipts have value that reduce the cost of the branded goods and that there is in consequence a mathematical reduction in the selling price, and the majority agree that this is price cutting. That this was done knowingly is beyond dispute, for it is axiomatic that one intends the natural consequences of his own acts, and in this case the members of defendants' club were keenly aware of what they were doing, as evidenced by their failure to invite any competitors to join with them. Moreover, the statute does not require a showing of motive or wilful intent to *injure,* but merely — what has been abundantly shown here — wilfully and knowingly *selling* at any reduced price. Such selling "is an assault upon the good will" and constitutes "unfair competition"; the manufacturer whose good will is thus assaulted is thereby damaged, and is entitled to injunctive relief to prevent continuing damage.

. Defendants have also raised the constitutional argument that to prohibit cash discounts on retail sales of minimum priced articles violates due process, in that such a practice has no relation to the only constitutional object of the statute, the protection of good will. Such an argument assumes that the practice in question has no effect on good will because it did not result in price cutting, and I think it is clear that this is not so. The regulation of otherwise legitimate practices in the valid exercise of police power, which has here been sustained (*Bourjois Sales Corp.* v. *Dorfman, supra; Old Dearborn Distr. Co.* v. *Seagram-Distillers Corp., supra*), must be distinguished from absolute prohibition of legitimate trade devices or from regulation unconnected with any proper object (*People* v. *Gillson,* 109 N. Y. 389; *Sperry & Hutchinson Co.* v. *McBride,* 307 Mass. 408). The Fair Trade Law constitutes a lawful limitation upon the doctrine of freedom of contract (see *Guerlain, Inc.,* v. *Woolworth Co., supra*).

In the light of the foregoing, it is my view that the weight of the evidence lies with the finding of Special Term that the practice complained of does constitute price cutting, and the

Appellate Division was in error on the law when it held that such practice is not within the prohibition of our Fair Trade Law. Accordingly, the judgment of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and in the Appellate Division.

FULD, J. (dissenting). The present decision stigmatizes as unfair competition a long-established business practice, a practice untainted by deceit, oppression or unfair dealing and involving no assault upon the good will of the manufacturer. Reaching the result which it has, on the basis of a strained construction of the Fair Trade Law, the court turns a statute designed to promote fair trade into an unfair instrument suppressing honorable and decent competition and outlawing reasonable merchandising methods.

Since defendants entered into no fair trade agreement with plaintiff, we are not here concerned with the validity of any contractual arrangements that the manufacturer may make with those dealers whom it selects to handle its products. The statutory action of unfair competition — upon which plaintiff must of necessity rely — sounds in tort, not contract, and the statute expressly classifies that tort as a wilful one. Its primary objective is to prevent wilful assaults upon the manufacturer's good will (see, e.g., *Old Dearborn Distr. Co.* v. *Seagram-Distillers Corp.*, 299 U. S. 183, 193) — or, to phrase it as the majority opinion does (p. 66), the legislation '' was aimed principally at the vicious ' loss leader ' type of competition prevalent in the mid-thirties.'' It does not, as the majority asserts, '' unqualifiedly provide that price cutting fair trade articles in and of itself is unfair competition '' (p. 70). On the contrary, damage is expressly made the gist of the claim as in actions on the case at common law. Thus, the statute makes '' actionable '' but only '' *at the suit of any person damaged thereby* '' the act of '' Wilfully and knowingly  *  *  *  selling any commodity at less than the price stipulated '' in any fair trade agreement (General Business Law, § 369-b; emphasis supplied). To spell out a cause of action, therefore, a plaintiff must show (1) that there have been sales below the stipulated price, (2) that such sales were made wilfully and knowingly, and (3) that plaintiff has suffered or is likely to suffer legal

damage. To obtain injunctive relief, as is sought in this case, plaintiff in addition must satisfy the traditional requirements of a court of equity and show, among other items, the likelihood of irreparable harm. In short, price cutting is condemned only when it is wilful, when it is injurious to the manufacturer's good will or when it otherwise causes injury to plaintiff.

Consideration of the record before us demonstrates that no one of those essential requirements of proof has been met. All sales of plaintiff's branded merchandise have been at the stipulated price. There has been no price cutting whatever in the conventional sense. The merchandising plan here challenged by plaintiff is of general application and is neither directed at, connected with, nor limited to plaintiff's fair-traded articles. Cash receipts are issued on all sales of goods, whether or not fair-traded, redeemable in any articles handled in defendants' store and in the fourteen other stores, in the Lynbrook area, which constitute the Lynbrook Dividend Club. The receipts may be exchanged for either branded or unbranded articles at the rate of twenty-five cents of merchandise for $10 of cash receipts. Most of the products sold in this group of stores are unbranded and hence not subject to the provisions of the Fair Trade Law. As analysis thus makes evident, there is lacking proof of any wilful assault upon, or injury to, plaintiff's good will or of any misuse of its trade-marks. And not only is there no showing of irreparable harm, but there is not a scintilla of evidence that defendants' use of cash receipts has produced or is likely to cause plaintiff any damage whatsoever. As the Appellate Division found — and I find no warrant for overturning the finding — " Allowance of said cash discounts has not reduced the minimum resale price of any commodity, and has not injured the goodwill value of any article of plaintiff's merchandise." The conclusion is, therefore, inescapable that plaintiff has failed either to establish a case of unfair competition within the meaning of the statute or to sustain its right to injunctive relief.

To be sure, the cash receipts have value. Those purchasers who accumulate the necessary amount can convert them into merchandise and thus reduce the cost of the branded and unbranded goods which they have purchased. They are the beneficiaries of a cash discount on all their purchases when-

ever they avail themselves of the advantages of this plan. It cannot be denied, therefore, that there is a mathematical reduction of the selling price of branded goods. But, the question arises, does such reduction under the special circumstances disclosed by this record constitute wilful price cutting injurious to the manufacturer's good will? In my view, it does not.

The use of cash receipts and trading stamps and the granting of cash discounts long antedated fair trade legislation. Defendants have been issuing cash receipts for some thirteen or fourteen years. There is not the slightest evidence that it was the legislature's design to outlaw such normal and long-established business practices of general application. It is an unwarranted extension of the Fair Trade Law to hold that what defendants are doing renders them guilty of unfair competition and such, I note, is the conclusion of the courts of other states in dealing with the cognate problem of trading stamps. (See *Weco Products Co.* v. *Mid-City Cut Rate Drug Stores,* 55 Cal. App. 2d 684; *Food & Grocery Bureau* v. *Garfield,* 20 Cal. 2d 228; *Bristol-Myers Co.* v. *Lit Bros., Inc.,* 336 Pa. 81.) In sanctioning the use of such devices, we would not be engrafting an additional exception upon the statute. Rather, we would be holding merely that there has not been a wilful sale at less than the stipulated price, which causes or is likely to cause damage to the manufacturer's good will.

Nor need we concern ourselves with the hypothetical possibility of trade wars involving unwarrantedly high cash discounts or of merchandising plans specifically directed against the fair-traded products of a manufacturer. Courts are not powerless to deal with obvious subterfuges. (See *Guerlain, Inc.,* v. *Woolworth Co.,* 297 N. Y. 11.) There is time to deal with such situations when they are presented by a " person damaged thereby " (General Business Law, § 369-b). It is enough for the disposition of this case that there is here a complete failure of proof not alone of any subterfuge but of all of the essential ingredients of a statutory action for unfair competition.

LEWIS, CONWAY, DESMOND and DYE, JJ., concur with FROESSEL, J.; FULD, J., dissents in opinion in which LOUGHRAN, Ch. J., concurs.

Judgment accordingly.