Sunbeam Corporation,

*vs.*

Philip Klein, trading as Phil's Distributors.

*New Castle, March 27, 1951.*

*David F. Anderson* and *Richard H. Ellis,* of Souther-land Berl & Potter, Wilmington, for the plaintiff.

*John Van Brunt, Jr.,* and *David Snellenburg, 2nd,* of Killoran & Van Brunt, Wilmington, for the defendant.

WOLCOTT, Chancellor: This matter is before me on plaintiff's motion to dismiss the defendant's second defense.

The action was brought by the plaintiff to enjoin the defendant from further violation of the *Delaware Fair Trade Act,* 43 *Laws, Ch.* 201, by selling or offering for sale at less than the retail price stipulated in any contract between the plaintiff and any other person in the State of Delaware, commodities manufactured and sold by the plaintiff under its trade-marks.

The plaintiff, a corporation of the State of Illinois, is engaged in the business of manufacturing and selling electrical household appliances of various types and uses the words "Sunbeam", "Ironmaster", "Mixmaster" and "Shavemaster" as trade-marks for its various appliances.

The plaintiff's commodities bearing its trade-marks are widely and extensively advertised and sold in Delaware and elsewhere, and have become favorably known to the trade and to the public as the plaintiff's commodities. It is alleged and admitted by the answer that the plaintiff has built up valuable good will by reason thereof.

Commencing in 1937, the plaintiff entered into contracts with retail distributors of electrical appliances in Delaware in accordance with the provisions of the *Delaware Fair Trade Act* under which it was agreed that the retailers would not sell any of the plaintiff's commodities subject to such contracts at prices less than the minimum prices set forth in schedules. attached to the contracts, or set forth in any supplemental schedule issued from time to time.

The complaint alleges and the answer admits that the defendant, knowing of the existence of such contracts, nevertheless, from time to time offered for sale and sold at prices below plaintiff's established minimum resale prices commodities bearing plaintiff's trade-marks. The sales made by the defendant at prices less than the minimum resale prices were not made under circumstances falling within the purview of *Section 5* of the *Delaware Fair Trade Act* which permits resale at prices less than the minimum price whenever (a) the sale is made in order to close out the owner's stock for the purpose of discontinuing dealing in the products; (b) whenever the trade-mark has been removed from the product; (c) whenever the product is damaged or altered; and (d) whenever such sale is by an officer acting under court order.

The defendant's answer contains a second separate defense in which it is alleged that the defendant is in fair and open competition with the four retailers with whom the plaintiff has entered into fair trade contracts. It is alleged that the four retailers with whom the plaintiff has fair trade contracts sell the plaintiff's commodities on installment credit terms at prices the same or very slightly in excess of the minimum resale prices established by the plaintiff. It is alleged that in making installment credit sales, credit losses exceed 20% of the established minimum resale prices of the plaintiff's commodities and that, therefore, the sale of plaintiff's com-

modities on installment credit terms amounts to the giving by the retailers with whom the plaintiff has fair trade contracts of a concession or special privilege resulting in a reduction of the minimum resale prices in violation of the fair trade contracts plaintiff has with the retailers concerned.

By reason of the foregoing, defendant alleges that the plaintiff does not have in full force and effect in Delaware fair trade contracts of general applicability to all retailers, but has only such contracts applicable to installment credit retailers who form a separate class of retailers not in competition with the defendant. The defendant contends, therefore, that the plaintiff's contracts are not binding as fair trade contracts on him. The plaintiff moved to dismiss the second separate defense.

*Section* 6 of the *Fair Trade Act* prohibits anyone from wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any fair trade contract, whether or not the person is or is not a party to such contract. *Section* 2 of the *Act* permits the fixing of minimum resale prices when the contract relates to the sale of a commodity bearing a trade-mark, brand or name and in free and open competition with commodities of the same general class within the State of Delaware.

The purpose of fair trade acts primarily is to protect the good will a manufacturer has built up for his trade name or brand. Such acts are based upon the premise that price cutting by retailers is injurious to the manufacturer's good will. The theory behind the act is that the best way to enable a manufacturer to protect his property in his trade-mark is to permit him to establish contractually minimum resale prices in order to avoid the harmful effects of price cutting. *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.*, 299 *U.S.* 183, 57 *S. Ct.* 139, 81 *L. Ed.* 109, 106 *A.L.R.* 1476.

■ ■ Permissive price restriction has been adopted by the Legislature as an appropriate means to achieve this legitimate end. Even after sale of the commodity to the retailer, the manufacturer still owns his good will and may protect it. The essence of a violation of a fair trade act consists not in the actual sale of the commodity but in the proscribed use of the producer's good will in order to sell the product. *Old Dearborn Distributing Co. v. Seagram-Distillers Corp., supra., Houbigant Sales Corp. v. Woods Cut Rate Store,* 123 *N. J. Eq.* 40, 196 *A.* 683; *Guerlain, Inc., v. F. W. Woolworth Co.,* 170 *Misc.* 150, 9 *N.Y.S.* 2d 886.

■ The defendant contends that because the four retailers with whom the plaintiff has fair trade contracts in Delaware to establish the protective minimum resale prices sell the plaintiff's commodities on installment credit, a concession has been made by the plaintiff to the contracting retailers which makes it necessary for the defendant to sell at less than the minimum prices established by the plaintiff in order to compete. Defendant concedes that there is no reported authority in support of his argument. As a matter of fact, reported decisions which, by analogy, may bear somewhat upon the precise issue raised by the defendant do not support his position. It is true that the giving of trading stamps and cash register receipts redeemable either in merchandise or cash by purchasers have been held to be price cutting within the meaning of the fair trade acts and, as such, enjoinable. *Schuster & Co. v. Steffes,* 237 *Wis.* 41, 295 *N.W.* 737, 133 *A.L.R.* 1071; *Bristol-Myers Co. v. Picker,* 302 *N.Y.* 61, 96 *N.E.* 2d 177. But, other services furnished by a retailer to attract customers to his business such as the furnishing of parking facilities, baby sitting, delivery service and the extension of credit, are not held to be price cutting within the meaning of fair trade acts. *Bristol-Myers Co. v. Lit Bros., Inc.,* 336 *Pa.* 81, 6 *A.* 2d 843; *Weco Products Co. v. Mid-City Cut-Rate Drug Stores,* 55 *Cal. App.* 2d 684, 131 *P.* 2d 856.

 It must be borne in mind that the defendant was not forced to purchase the plaintiff's commodities, and that he purchased them knowing of the existence of the established minimum resale prices. He may not now argue that the known minimum resale prices are not binding upon him. As long as the defendant desires to sell the plaintiff's commodities with the aid and assistance of the good will the plaintiff has built up for its trade-marks, he must abide by the minimum resale prices established by the plaintiff under the *Delaware Fair Trade Act*.

The motion to dismiss the second separate defense is granted. An order 'may be presented upon notice.