**JANTZEN INC., Plaintiff,**

v.

**E. J. KORVETTE, INC., Defendant.**

United States District Court
S. D. New York.

June 21, 1963.

Rogers, Hoge & Hills, New York City, for plaintiff; Charles D. Snead, Jr., New York City, of counsel.

Edwin H. Friedman, New York City, for defendant.

METZNER, District Judge.

Plaintiff, Jantzen Inc., seeks a temporary injunction restraining defendant, E. J. Korvette, Inc., from selling plaintiff's merchandise below the resale prices fixed pursuant to the Fair Trade Law of New York (§§ 369–a and 369–b of the General Business Law). Plaintiff is the manufacturer of a well-known, well advertised and trade-marked line of men's and women's beachwear. Defendant owns and operates a number of well-known "discount" stores in the metropolitan area.

The defendant does not question the constitutionality or the legality of the statute upon which the litigation is predicated, nor does it deny that it has made sales of plaintiff's merchandise below the prices fixed by plaintiff in fair-trade agreements with other retailers in the State of New York. Defendant does raise a question as to whether it received the requisite notice from plaintiff for it to be bound by the fair-trade agreements. However, plaintiff has submitted proof, sufficient for this motion, that notice was received by the defendant.

██ The main thrust of defendant's opposition to the motion is that the contract in question does not fix a "stipulated" price. It bases its argument on paragraph 4 of the agreement, which provides that the retailer will breach its obligation not to sell the article at less than the stipulated minimum retail price if it shall make any concession of any kind whatsoever "whether by the giving of coupons, or otherwise" in connection with such sale, unless specifically authorized by the distributor, but "it shall not constitute a breach * * * of this agreement to offer trading stamps in connection with any such sale."

Defendant contends that the value of trading stamps redeemable in merchandise by the customer from the supplier of the stamps varies according to the type of trading stamp used by the retailer. It is common knowledge that extensive advertising campaigns are engaged in by the suppliers of such stamps to condition the buying public to make their purchases at stores where their stamps are used because of their greater "merchandise" value over those of competitors. Furthermore, plaintiff's minimum price agreement does not contain any limitation as to the number of trading stamps that may be given in connection with the purchase of a swimsuit, the price of which may be fixed by the agreement at $5. Thus, even if the use of trading stamps were limited by the fair-trade agreement to one designated supplier, there is no limitation as to the number of units that the retailer can issue in conjunction with a purchase of a $5 item. The result is that the ultimate net cost to the consumer is not fixed or stipulated at one price by the agreement, and defendant argues that the agreement is unenforceable under the Fair Trade Law of New York.

Section 369–a provides that no contract relating to the resale of a trade-marked article shall be deemed in violation of the laws of New York if it contains a provision that "the buyer will not resell such commodity except at the *price stipulated* by the vendor." (Emphasis added.)

Section 369–b provides:

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the *price stipulated* in any contract * * * is unfair competition and is actionable at the suit of any per-

son damaged thereby." (Emphasis added.)

New York, contrary to some other states having similar fair-trade laws (see Callmann, Unfair Competition and Trade-Marks § 24.2(c) (3), at 482 (2d ed. 1950)), holds that the issuance of such stamps is a mathematical reduction in the selling price, which is price cutting. Bristol-Myers Co. v. Picker, 302 N.Y. 61, 96 N.E.2d 177, 22 A.L.R.2d 1203 (1950). Admittedly, this determination is a highly technical, strict construction of the law. See 17 Brooklyn L.Rev. 357 (1951); 26 N.Y.U.L.Rev. 376 (1951). However, this is the controlling law in this case.

In the instant case, the manufacturer permits the use of trading stamps in conjunction with the sale of articles sought to be protected by the Fair Trade Law. It is a form of price cutting under New York law, but since it does not discriminate between retailers there would be no right to complain if it were uniformly applied. General Elec. Co. v. S. Klein-on-the-Square, Inc., 121 N.Y.S.2d 37, 49 (Sup.Ct.1953).

If the plaintiff had provided that only one type of trading stamp be used, and a fixed ratio be maintained between the number of stamps issued and the selling price, then perhaps it could be argued that a stipulated minimum price was fixed by agreement between the manufacturer and the retailer. However, there is no limitation as to which type of trading stamp is to be used by the retailer, or as to the number of units to be issued with a purchase of plaintiff's product. Consequently, there can be a disparity in the discount afforded the customer through the issuance of trading stamps. The possibility of such variance in price precludes the agreement from coming within the terms of the New York statute.

█ Defendant also urges that the plaintiff comes into court with unclean hands. It is unnecessary to review the grounds for this contention, since it adds up to no more than that the plaintiff

made an oral agreement to settle the differences between the parties, which it has refused to honor. Such action does not violate the standards of equitable conduct for which the doctrine of unclean hands can be successfully invoked.

Motion denied. So ordered.