### SUNBEAM CORP. v. MARCUS.

United States District Court
S. D. New York.
May 22, 1952.

Rogers, Hoge & Hills, New York City, George M. Chapman, Mercer L. Stockell, and Thomas J. Stephens, all of New York City, of counsel, for plaintiff.

James T. Burke, New York City, for defendant.

WEINFELD, District Judge.

The plaintiff in this action brought under the Fair Trade Act of New York[1] seeks a

1. McK.Consolidated Laws of the State of New York, c. 20, General Business Law, Section 369–b,

"§ 369–b. Unfair competition defined and made actionable

"Wilfully and knowingly advertising, offering for sale or selling any commodity

preliminary injunction to restrain the defendant from selling plaintiff's trade marked products at prices below those specified in a fair trade contract between them. Jurisdiction is based upon diversity of citizenship.

Plaintiff is a manufacturer of electrical appliances which are distributed under the trade mark "Sunbeam." It adopted additional trade marks for its various products, including "Ironmaster," "Coffeemaster," "Mixmaster" and "Shavemaster." These and other of plaintiff's trade-marked products have been widely and nationally advertised and a valuable good will exists with respect to them.

. The maintenance of minimum fair trade prices under various State Fair Trade Laws has been an essential part of its distribution policy. It has maintained and enforced this policy in New York State since 1937. The papers also establish that the appliances sold by plaintiff are in fair and open competition with products of the same general class produced by others.

Prior to the decision in Schwegmann Bros. v. Calvert Distillers Corp., 1951, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, plaintiff enforced or sought to enforce its fair trade prices against non-signers as well as signers of fair trade contracts. Following the rendition of the decision, it instituted a universal fair trade contract system with its wholesale distributors and retailers. This is designed to limit sales of "Sunbeam" products to those having fair trade contracts with the plaintiff. The wholesalers agree (1) to sell the plaintiff's trade marked products at not less than stipulated minimum prices, and (2) to sell such products only to retailers who have signed fair trade contracts with plaintiff.

The defendant is a retailer in White Plains, within the Greater New York-Metropolitan area. He entered into a fair trade contract with plaintiff on August 29, 1951, similar to one signed by approximately 5,000 retailers of electrical appliances operating within that area. The

affidavits abundantly established that the defendant, almost from the date of his contract, embarked upon, and continued, a sales policy which violates the terms of the agreement. He has advertised extensively in White Plains and adjacent areas as a discount house, offering to sell, and has sold, "Ironmaster," "Coffeemaster," "Mixmaster" and "Shavemaster," plaintiff's "Sunbeam" products, below the prices stipulated under the terms of his fair trade agreement. Warnings to the defendant to desist have been ineffective. Indeed, the defendant does not raise any issue as to the violations, which have been open and notorious.

He seeks to defeat plaintiff's motion for a preliminary injunction upon the ground that there has been serious price cutting by others and that enforcement by the plaintiff has been faulty and ineffective in the locality of defendant's operations—that plaintiff has not shown reasonable and diligent enforcement of its fair trade prices. This is the sole defense. The affidavits submitted in opposition to the motion do not support the plea. The defendant asserts that shortly after he signed his contract with plaintiff, he was advised by customers that "Sunbeam" products were offered below the list price by other dealers in White Plains and adjoining towns; that his investigation confirmed that the White Plains branch of R. H. Macy & Co. and one other store engaged in this practice. Except for these two instances, which rest upon his unsupported statement, no evidential proof is offered nor is any information submitted as to the relationship between those retailers and the plaintiff.

The defendant further charges that one competitor, whose president submitted an affidavit in support of plaintiff's motion, advertised one of plaintiff's products below the fair trade price. The competitor, rather unconvincingly, seeks to explain away the advertisement by asserting that it was intended to advertise a shopworn, rebuilt or defective commodity. Whether the item was of good quality or defective, the in-

at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine–a, whether the person so advertis-

ing, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

cident strengthens, rather than weakens, plaintiff's position. Within two days after the appearance of the advertisement, its representative investigated the matter, obtained the prompt removal from the sale of the questioned item and warned the dealer against further violation, although the latter contended that none was intended. The investigator promptly filed with plaintiff in the usual course of business a detailed report, which is attached to the moving papers, from which it appears that the plaintiff's policy was one of vigilant enforcement of the fair trade practice agreements whenever violations occurred or it had reason to suspect them.

Finally, defendant charges that plaintiff does not have sufficient enforcement agents, considering the number of dealers and wholesalers who operate in the Metropolitan area. It must be presumed that defendant and others who signed these agreements intend to abide by them. Policing is necessary because of the refusal by defendant and others to honor the terms of their agreements. In effect, defendant now complains because his violations added to that of other infringers are so rampant and extensive that plaintiff is hard put to enforce its price policy. According to this theory, if the violations are sufficiently widespread, making it difficult for plaintiff to keep apace with them, it redounds to the violators' advantage and immunizes them from prosecution.

The plea of nonenforcement or abandonment of the fair trade policy by plaintiff is upon this record entirely without merit.

First, plaintiff, since the Schwegmann decision, in an effort to preserve and enforce its basic policy, set up its universal fair trade contract system, whereby the wholesaler under his contract with the plaintiff agrees that he will not sell plaintiff's trade marked products to a retailer who has not executed a contract to maintain the stipulated retail fair trade price. The retailer under his contract with plaintiff in ordering from the wholesaler is required to endorse his contract identification number upon every order for plaintiff's product, and upon endorsement reaffirms his fair trade contract.

We do not pass upon the validity of this universal fair trade contract system since it is not in issue here and plaintiff, of course, relies upon the fact that defendant is a signer. It is relevant, however, as indicating an attempt to secure faithful performance of its contract by retailers.

Second, plaintiff maintains a staff in the New York-Metropolitan area to investigate and enforce compliance. Through various checks it has sought to enforce to the best of its ability the universal fair trade contract system.

Third, when warning letters to violators failed to bring results, it instituted legal proceedings to enforce its rights. A great number of actions have been commenced in this and the State Courts, resulting in judgments. Others are still pending awaiting trial. It has instituted a suit against the largest violator, apparently a non-signer, charging it with violation of the anti-trust laws, inducement of breach of contract and wilful injury to its trade marks.

The proof is convincing that the enforcement has been prompt, vigorous and impartial and that all reasonable steps have been taken to secure compliance.

The manufacturer is entitled to relief under the New York Fair Trade Law when he establishes:

(1) That there is a genuine fair trade price structure;

(2) That there is reasonable and diligent enforcement—that plaintiff has not by act or conduct waived the violation or abandoned its policy through all effective means;

(3) That the relief sought against the violator is for the sole purpose of enforcement and not for any ulterior purpose; and

(4) Under equitable principles the plaintiff has not indulged in practices offensive to the conscience of the Court—that he comes into equity with clean hands.[2]

2. General Electric Co. v. R. H. Macy & Co., 199 Misc. 87, 103 N.Y.S.2d 440, 446–447; Calvert Distillers Corp. v. Nussbaum Liquor Store, Inc., 166 Misc. 342, 2 N.Y.S.2d 320.

Measured by these standards the plaintiff has established its right to a preliminary injunction. The defendant's acts are in clear violation of Section 369–b of the New York General Business Law and unless restrained their continuance pending trial will result in irreparable injury to plaintiff and may lead to destruction of its fair trade structure and the impairment of its good will.[3]

. Settle order on notice which shall contain the facts as found herein.

3. Guerlain, Inc. v. Woolworth Co., 297 N.Y. 11, 74 N.E.2d 217; Bristol-Myers Co. v. Picker, 302 N.Y. 61, 96 N.E.2d 177, 22 A.L.R.2d 1203.