**The PARKER PEN COMPANY, Plaintiff,**

v.

**CHARLES APPLIANCES Incorporated, Defendant.**

United States District Court
S. D. New York.
July 8, 1957.

Rogers, Hoge & Hills, New York City, for plaintiff, George M. Chapman, Francis P. Kelly, New York City, of counsel.

Isidor Edward Leinwand, New York City, for defendant.

LEVET, District Judge.

This is an application for a preliminary injunction against defendant's sale of plaintiff's trademarked products for less than the minimum fair trade price. Jurisdiction here is based upon diversity of citizenship.

Plaintiff has manufactured and sold fountain pens since 1890. In 1891, it adopted and began to use the notation "Parker" as a trademark on its fountain pens and has since continuously used this mark. Plaintiff presently possesses numerous trademarks for its products. In 1939, a certain new model fountain pen, mechanical pencil and desk set were manufactured and called "51." Parker "51" was employed as a trademark commencing in the same year. Another trademark used is "21," a lower priced pen. In 1955, plaintiff placed on the market a pencil called "Liquid Lead." Each Parker product is separately boxed and packaged and the trademark appears on the outside. The trade marks are also

prominent in plaintiff's advertising, both nationally and in New York, for which advertising the company spends large amounts of money. Such advertising and identifying marks have created certain good-will, which appears to be a valuable property right. The Parker products are sold to more than 30,000 retailers located in the principal distribution centers of the country.

The writing instruments manufactured by the plaintiff are in direct competition with a number of nationally advertised brands, such as Schaeffer, Waterman and Eversharp. It has been plaintiff's policy to protect its valuable good-will and reputation especially when faced with price-cutting by vendors who compete with the retail dealers handling plaintiff's products. Plaintiff appears to have been reasonably active in taking steps to insure protection against such price-cutting. In this connection it has since 1937 entered into fair trade contracts with a large number of retail dealers throughout the State of New York.

The defendant, Charles Appliances Incorporated, executed a fair trade contract with plaintiff on August 13, 1956, which the defendant cancelled in October, 1956. Thereafter, it appears, and it is not disputed, that the defendant engaged in price-cutting plaintiff's products. Parker "51" pens which listed at $16.50 were sold by the defendant at $9.90.

Plaintiff's contracts with its retailers calling for minimum retail fair trade prices were entered into pursuant to the General Business Law of the State of New York (McKinney's Consol.Laws, c. 20, § 369-a), which reads:

"*Price fixing of certain commodities permitted*

"1. No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the state of New York by reason of any of the following provisions which may be contained in such contracts:

"(a) That the buyer will not re-sell such commodity except at the price stipulated by the vendor; * * *"

The Miller-Tydings Amendment (50 Stat. 693 (1937)) to the Sherman Anti-Trust Act (15 U.S.C.A. § 1 et seq.), in specifically removing minimum resale price arrangements from the purview of the federal antitrust statutes, supports the contracts entered into under the New York Fair Trade Law.

Section 369-b of the New York statute brands the refusal to observe such a commitment as here involved "unfair competition." It reads:

"*Unfair competition defined and made actionable*

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

The "non-signer loophole" created by the decision of the Supreme Court in Schwegmann Bros. v. Calvert Distillers, 1951, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, was eliminated by 66 Stat. 632, an amendment to the Federal Trade Commission Act (15 U.S.C.A. § 45). The 1952 amendment, familiarly known as the "Maguire Act," was construed and upheld by the United States Court of Appeals for the Fifth Circuit in the case of Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., 1953, 205 F.2d 788. The United States Supreme Court denied certiorari, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 404. Similarly, the court

refused to review a decision of the New York Court of Appeals sustaining the Fair Trade Act of this state against attack. General Electric Co. v. Masters, Inc., 1954, 307 N.Y. 229, 120 N.E.2d 802. The Supreme Court in 348 U.S. 892 gave as its reason for dismissing the appeal "want of substantial Federal question."

The New York Court of Appeals in the General Electric case, supra, in referring to the New York Fair Trade Act, declared:

"* * * As to marked goods, it merely permits a manufacturer, whose trade-mark or brand name may represent a large advertising investment and a carefully nurtured good will, to prevent retailers, over whom he would otherwise have little control, from seriously impairing the value of that trade-mark and good will by reselling his identified products at unreasonably low prices. * * *" (307 N.Y. at pages 238–239, 120 N.E.2d at page 804)

There appears to be no substantial reason why plaintiff's motion for a preliminary injunction should not be granted. Plaintiff's refusal to sell to the defendant does not bar the injunctive relief sought here. See Dorothy Gray, Ltd. v. Johnson Wholesale Perfume Co., Inc., D.C.Conn.1941, 45 F.Supp. 744, 746. The defendant's acts are in clear violation of Section 369-b of the General Business Law of the State of New York. Unless these acts are restrained, their continuance pending trial will result in irreparable injury to plaintiff and may lead to the destruction of its fair trade structure and the impairment of its good-will. See Sunbeam Corporation v. Marcus, D.C.S.D.N.Y.1952, 105 F.Supp. 39, 42.

I, therefore, conclude that (1) the proof is sufficient to determine that the enforcement of the rights of plaintiff have been adequate and that reasonable steps have been taken to secure compliance; (2) the plaintiff here is entitled to relief under the New York Fair Trade Law upon establishment at the trial of the allegations contained in the complaint; (3) relief sought against the defendant is for the sole purpose of enforcement of plaintiff's Fair Trade Law right; (4) there is no reason why preliminary injunction should not be granted; (5) plaintiff has established its right to a preliminary injunction since the defendant's acts are in clear violation of Section 369-b of the General Business Law of the State of New York and, unless restrained pending trial, such conduct will result in irreparable injury to the plaintiff and may lead to the destruction of its fair trade structure and the impairment of its good-will.

Settle order on notice which shall recite the facts as found herein and which shall provide that said order shall be conditioned upon plaintiff's furnishing a bond to the satisfaction of the court in the amount of $5,000.