George Timer, J.
This is a motion to restrain defendant pendente lite from selling products bearing plaintiff’s name, brands and trade-mark below the established price.
Pursuant to the General Business Law (§ 369-a et seq.) plaintiff entered into agreements with retail druggists in the State of New York under which plaintiff did stipulate minimum retail resale prices for its products. Specifically, this proceeding involves price cutting of “ Metrecal ”, a dietary for weight control. It is a relatively new product and was first introduced into the New York market in the Fall of 1959. In view of the public concern with weight control, the court does not doubt that plaintiff’s product became a fast seller in the drug trade. Its very popularity, it would appear, resulted in an increasing degree of price cutting.
In the Spring of this year, defendant was informed of the existence of fair-trade agreements affecting Metrecal and of the minimum retail resale price then in force. Nevertheless, the defendant continued to sell the product at prices less than the established fair-trade levels. This the defendant does not deny, but urges that there was a complete lack of action by the plaintiff to procure general compliance with the fair-trade price. The situation is one, in the defendant’s view, whereby the Fair Trade Law becomes a vehicle of discrimination.
*323 If, indeed, the plaintiff, with knowledge of the widespread price cutting of its product, failed to take effective measures to prevent it, the court would agree with the defendant that both the law and elemental fairness require a finding that plaintiff had waived or abandoned its rights. Metrecal, however, as the defendant says, came on the market but several months ago. In the face of reports of price cutting, an investigation was conducted by the plaintiff, beginning in April, 1960, whereby 800 different retail drug outlets were ‘ ‘ shopped ’ ’. Over 600 of these stores were found to be observing fair-trade prices. Those stores that were found to have cut the price by 10 cents or less were contacted and agreed to maintain the minimum prices. Over 100 actions were commenced by the plaintiff in the past three months.* Price lists containing the established fair-trade prices were regularly mailed to the 4,000 druggists in the New York area. These figures disprove defendant’s contention that the plaintiff is not willing to spend the time and effort necessary to enforce fair trade. For that matter, assuming that the defendant’s shoppers did disclose price cutting of Metrecal, the question of whether a particular retailer is bound by the statutes of the State may not be determined by a contest to sec whether plaintiff or defendant can cite more stores which are abiding by or violating the law. A retailer may not be permitted to violate the law simply because it can show that some number of other stores are also violating the law. The question must be resolved by viewing the over-all picture. In any event, as has been said, the fact that violations are widespread may not redound “ to the violators’ advantage and immunizes them from prosecution ”.**
The court does not question that price cutting is harmful to the plaintiff. The successful operation of its business is dependent upon retail druggists stocldng and promoting its products. Already, as a result of the activities of the minority of price cutters, other retailers are threatening to discontinue doing business with the plaintiff. The present and prospective injury to plaintiff’s business is obvious. The law was enacted to “ pro *324 tect the good will of the trade-mark owner * * *. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will and constitutes what the statute denominates ' unfair competition ’ " *
For the reasons stated, the motion is granted. Bond is fixed in the sum of $250. The plaintiff shall move, in the order to be submitted hereon, for an order setting the case down for trial for a day certain; dispensing with the right of either party to pretrial discovery and other procedure; eliminating the necessity for filing a statement of readiness; and requiring the Trial Term Clerk to accept the filing of a note of issue, upon payment of appropriate fee, upon short notice to defendant’s counsel.
It is noted that the actions to which defendant refers, which denied relief pendente lite against other defendants in August, 1960, are on the Beady Calendar for September, 1960, and will be called on October 17, 1960. They may not be reached for trial on said date, however, since the order did not provide for a day certain. Nevertheless, if such actions would be dispositive of the issues raised in the present action, perhaps all could be consolidated, or the parties might stipulate that the result in one would be binding on the parties concerned, and the court requested to hold an immediate trial.

 Cf. as to the sufficiency of the plaintiff’s enforcement program, Mead Johnson & Co. v. Sirbel Sales Corp. (N. Y. L. J., Aug. 10, 1960, p. 5, col. 5, Amsterdam, J.) ; Mead Johnson & Co. v. Waganfeld (N. Y. L. J., Sept. 29, 1960, p. 14, col. 4, Loreto, J.) ; Mead Johnson & Co. v. Lynnette Drugs (N. Y. L. J., Sept. 6, 1960, p. 10, col. 6, Epstein, J.) ; Mead Johnson & Co. v. Kyle Drug (N. Y. L. J., Sept. 9, 1960, p. 13, col, 1, Street, J.).

 Sunbeam Corp. v. Marcus (105 F. Supp. 39, 41 [1952], Weinfeld, J.) ; cf., also, Calvert Distillers Corp. v. Harry Fox, Inc. (N. Y. L. J., Jan. 14, 1941, p. 211, col. 4, Vaiente, J.) ; Revlon v. L & L Drug Co. (N. Y. L. J., April 25, 1960, p. 12, col. 8, Hecht, J.).

 Bristol-Myers Co. v. Picker (302 N. Y. 61, 70).