PARKE, DAVIS & COMPANY, Plaintiff,
v.
GREEN WILLOW, INC., Defendant.

United States District Court
S. D. New York.
Feb. 14, 1962.

Rogers, Hoge & Hills, New York City, George M. Chapman, Charles D. Snead, Jr., New York City, of counsel, for plaintiff.

Zelman & Zelman, New York City, Benjamin M. Zelman, Irving P. Zelman, New York City, of counsel, for defendant.

LEVET, District Judge.

This is an application for a preliminary injunction against defendant's sale of plaintiff's trademarked products at prices less than those stipulated in plaintiff's fair trade contracts in effect with certain retailers in the State of New York. The injunction is sought pursuant to New York General Business Law, § 369–b, which provides:

"§ 369–b. Unfair competition defined and made actionable

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

The plaintiff, a Michigan corporation, is a manufacturer of pharmaceuticals, ethical drugs and other drug products. These products bear one or more of plaintiff's trademarks, which have been duly registered in the United States Patent Office. These products include, among others, certain vitamin preparations,

"ABDEC," "MYADEC" and "PALA-DAC."

The defendant, a New York corporation, is a retail drug store located at 3 East 14 Street, New York City. Defendant, in the course of its business, sells and offers for sale drug and drug sundries, including products manufactured by plaintiff and bearing the name of Parke, Davis & Company and its trademarks.

In support of its application, plaintiff alleges in substance:

1. That for many years it has been engaged in an extensive advertising program, promoting its products to physicians, pharmacists and indirectly to ultimate consumers, as a result of which plaintiff has developed a vast good will.

2. That in the course of plaintiff's development and maintenance of its good will and system of distribution, it has established, wherever permitted by law, a fair trade structure under which uniform prices have been established for its products.

3. That such a fair trade structure was first established in the State of New York subsequent to the enactment of the New York Fair Trade Act in 1937.

4. That in order to assure itself that retailers are complying with its established resale prices, plaintiff investigates every infraction reported to or discovered by it and explains its fair trade program to retailers accused of violations thereof.

5. That plaintiff has an established policy of sending warning letters to retailers who persist in violations and of bringing suit where the retailers, after such warning, still refuse to stop their illegal conduct.

6. That in furtherance of its policy of enforcing its established minimum prices, plaintiff shops retailers, and since May 1960 more than 240 retailers in the New York metropolitan area have been investigated for price violation. Since the middle of 1960, plaintiff has instituted more than 60 enforcement actions in the Borough of Manhattan alone, and 25 injunctions have already been entered.

7. That a warning against price violations was sent to the defendant on March 3, 1961, to no avail, and on August 2, 1961 action was commenced against the defendant seeking to enjoin its price cutting on plaintiff's products; however, defendant's price cutting is continuing.

8. That defendant's customers are primarily workers from other business establishments located in the area who live in other parts of the metropolitan area of New York and thus, in effect, defendant is competing with local retailers in other areas of New York for the trade of these customers.

9. That the defendant's continued price cutting threatens to undermine plaintiff's fair trade price structure and is causing immediate and irreparable harm both to the good will and business of the plaintiff and to the good will and business of retailers who sell plaintiff's products at the fair trade price.

Defendant, in opposition to the application, asserts:

1. That the complaint fails to state a claim upon which relief can be granted.

2. That the prices fixed by the contract have been disregarded and violated by others in New York City and plaintiff, with knowledge of these violations, has acquiesced in such price cutting.

3. That plaintiff resorts to unfair merchandising and destroys competition.

4. That plaintiff may not avail itself of the Fair Trade because it offers inducements.

5. That the Fair Trade Law is unconstitutional and deprives defendant of due process.

6. That the complaint is indefinite and uncertain as it seeks a so-called blanket injunction, although *action* is directed only against three products.

■ Section 369–b is constitutional.[1] Bourjois Sales Corp. v. Dorfman, 1937,

---

1. Congress has approved state fair trade laws by passage of the Miller-Tydings Amendment in 1937, Title 15 U.S.C.A. § 1, and the so-called "nonsigner loop-

273 N.Y. 167, 7 N.E.2d 30, 110 A.L.R. 1411 (expressly relied upon the authority of Old Dearborn Distributing Co. v. Seagram Distillers Corp., 1936, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, wherein it was decided that a similar Illinois statute was not violative of due process); General Elec. Co. v. Masters, Inc., 1954, 307 N.Y. 229, 120 N.E.2d 802, appeal dismissed, 1954, 348 U.S. 892, 75 S.Ct. 215, 99 L.Ed. 701.

■ The complaint is sufficient. Parker Pen Company v. Charles Appliances, Inc., D.C.S.D.N.Y.1957, 153 F.Supp. 69; Sunbeam Corp. v. Marcus, D.C.S.D.N.Y. 1952, 105 F.Supp. 39; The Upjohn Company v. Liberty Drug Co., Inc., D.C.S.D. N.Y.1959, 193 F.Supp. 701.

The major points of defendant's opposition to the granting of the preliminary injunction appear to be that (1) plaintiff has acquiesced in the widespread price cutting of its fair traded products and (2) plaintiff cannot avail itself of the provisions of the New York Fair Trade Act because its products are not "in fair and open competition with commodities of the same general class." New York General Business Law, § 369–a.

An affidavit submitted by plaintiff states, as indicated above, that it investigates reports of price cutting, writes warning letters to dealers engaging in price cutting, and brings enforcement actions. (Affidavit, Schreiver, pp. 6, 7)

■ Defendant attempts to rebut the plaintiff's affidavit by reference to a New York case without citation, Winfield Drug Stores v. Bellmore Sales Corporation, where plaintiff asserts Mr. Justice Flynn in Findings of Fact and Conclusions of Law stated, in substance, that there has been a general breakdown in the price structure in the drug field in midtown Manhattan and that drug manufacturers were not enforcing Fair Trade

contracts. I do not take issue with the proposition that a failure of a manufacturer to enforce its fair trade contracts may result in a waiver of rights thereunder. Calvert Distillers Corporation v. Stockman, D.C.E.D.N.Y.1939, 26 F.Supp. 73, 74. However, as was stated in Mead Johnson & Co. v. R. H. Macy & Co., Sup. Ct., N.Y.Co.1960, 28 Misc.2d 322, 323, 208 N.Y.S.2d 574, 575:

"If, indeed, the plaintiff, with knowledge of the widespread price-cutting of its product, failed to take effective measures to prevent it, the Court would agree with the defendant that both the law and elemental fairness require a finding that plaintiff had waived or abandoned its rights. * * * [T]he question of whether a particular retailer is bound by the statutes of the State may not be determined by a contest to see whether plaintiff or defendant can cite more stores which are abiding by or violating the law. * * * The question must be resolved by viewing the over-all picture. In any event, as has been said, the fact that violations are widespread may not redound 'to the violators' advantage and immunize them from prosecution.' " (citations omitted)

The question of enforcement is one of fact. The affidavit submitted by plaintiff unequivocally states that it engages in active enforcement of its fair trade program, and defendant submits no affidavits to controvert this representation. Thus, no issue of fact is presented with regard to the enforcement efforts of plaintiff.

Defendant appears to take issue with plaintiff's assertion that it expends large sums of money for advertising and promotion of drug products on the ground that plaintiff's Exhibits 1 and 2 do not relate specifically to any of the plaintiff's

hole," disclosed by Schwegmann Bros. v. Calvert Corp., 1951, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 was eliminated in 1952 by the McGuire Act, Title 15 U.S.C.A. § 45. The McGuire Act was upheld in Schwegmann Bros. Giant Super-

markets v. Eli Lilly, 5 Cir. 1953, 205 F. 2d 788, cert. denied, 1953, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369, rehearing denied, 1953, 346 U.S. 905, 74 S.Ct. 217, 98 L.Ed. 404.

products allegedly sold by defendant below fair trade.

■ Defendant apparently misconstrues the basis of the proceeding here. One element sought to be established by plaintiff herein is its good will. The very reason for granting a preliminary injunction in cases of this type is to protect a party against irreparable harm which can take place in the form of injury to its good will. As Mr. Justice Sutherland stated in Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 1936, 299 U.S. 183, 194, 57 S.Ct. 139, 81 L.Ed. 109 in upholding the Illinois Fair Trade Act:

" * * * Good will is a valuable contributing aid to business—sometimes the most valuable contributing asset of the producer or distributor of commodities. And distinctive trade-marks, labels and brands, are legitimate aids to the creation or enlargement of such good will. It is well settled that the proprietor of the good will 'is entitled to protection as against one who attempts to deprive him of the benefits resulting from the same, by using his labels and trade-mark without his consent and authority.' McLean v. Fleming, 96 U.S. 245, 252 [24 L.Ed. 828]. 'Courts afford redress or relief upon the ground that a party, has a valuable interest in the good-will of his trade or business, and in the trademarks adopted to maintain and extend it.' Hanover [Star] Milling Co. v. Metcalf, 240 U.S. 403, 412, [36 S.Ct. 357, 360, 60 L.Ed. 713]. The ownership of the good will, we repeat, remains unchanged, notwithstanding the commodity has been parted with. Section 2 of the [Illinois] act does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates 'unfair competition.' See Liberty Warehouse Co. v. Burley Tobacco Growers' Ass'n, 276 U.S. 71, 91–92, 96–97 [48 S.Ct. 291, 72 L.Ed. 473]. * * *"

■■ This court finds it unneccessary to decide whether the particular form of advertising and promotional activities employed by plaintiff are the most desirable or effective means of creating and maintaining good will. The decision as to whether to engage in general institutional-type advertising or specific-product advertising is a business decision to be made by plaintiff and one which this court will not, and is not able to, review. If good will is found to exist and irreparable harm and injury is threatened as a result of the alleged price cutting, a preliminary injunction will be granted.

■ The assertion by defendant that plaintiff cannot avail itself of the provisions of the Fair Trade Act because it gives free samples to physicians to encourage their recommendation of such products is without merit. No authority has been offered by defendant to support its proposition that such promotional activity amounts to unfair competition.

The plaintiff has submitted affidavits of three professional shoppers who are employed by one Ralph T. Piper of New York City. (Affidavits of Herbert Schneider, Mary E. Burke, and Marion Baehr) Schneider states:

"On November 8, 1961, at approximately 2:45 p.m. under instructions from Mr. Piper, I entered the premises of GREEN WILLOW, Inc. at 3 East 14th Street, New York, New York, and requested a 50 cc. bottle of ABDEC vitamin drops. The clerk who waited on me was a male, approximately 5′9″ tall, weighing approximately 160 pounds, approximately 20 years of age, with dark hair. He indicated to me that the price of the 50 cc. bottle of ABDEC

vitamin drops was $2.91 plus $.09 tax. After paying for my purchase and receiving the same, I left the premises." (p. 1)

"The clerk did not state or indicate to me nor was there any other indication or notice upon sale, nor was there any other visible indication that the item which I bought was damaged or deteriorated in quality, or that it was sold as part of a close-out, or under the order of any court, or in any manner other than in the normal and ordinary course of business." (p. 2)

The affidavit of Burke differs only as to the date of her purchase, November 9, 1961, and as to the description of the clerk. Baehr's affidavit states that on November 9, 1961 she purchased 120 MYADEC Vitamin Capsules for $5.75 plus $.17 tax as a "special" from a clerk whose description is similar to the one given by Burke; otherwise it is substantially the same as the other affidavits. The plaintiff notified the defendant by letter on March 3, 1961 that, among other things, the minimum stipulated fair trade prices for 50 cc. of ABDEC vitamin drops was $3.51 and 100 MYADEC vitamin capsules was $9.67. (Pl. Ex. 4)

Contrary to defendant's assertion, plaintiff's *action* is not directed only against three products. It is plaintiff's proof which relates to specific products. This is not a case where the injunction sought covers violations of fair trade contracts not alleged in the complaint *or* established at the trial and seeks to embrace within its terms products not even dealt with by the defendant nor sold by the plaintiff. See Eton Chemists, Inc. v. Sussman, 1st Dept. 1951, 278 App.Div. 899, 104 N.Y.S.2d 902.

■ The complaint prays, among other things, that a preliminary injunction be issued by this court restraining defendant and persons associated with the defendant "from advertising, offering for sale, and/or selling any products bearing PARKE, DAVIS & COMPANY'S name or trademarks at less than the prices stipulated pursuant to PARKE, DAVIS & COMPANY retailer fair trade contracts in force and effect with retailers of plaintiff's products in the State of New York * * *." This cannot be construed as a so-called "blanket" injunction. The prayer for injunction delineates the products toward which it is directed, i. e., those manufactured by the plaintiff and bearing its registered trade marks and good will, and designates the fair trade contracts it alleges were violated. It would be unreasonable for this court to require that the plaintiff introduce proof as to each one of its numerous products before granting a preliminary injunction. The affidavits submitted by plaintiff establish that defendant has been guilty of price cutting on at least three occasions and this is sufficient to justify the granting of a preliminary injunction. It is well established that the standards of proof required for the granting of a preliminary injunction are different than those required for a final decision. The statement by Judge Frank in Hamilton Watch Co. v. Benrus Watch Co., 2 Cir. 1953, 206 F.2d 738, 740, is applicable here:

"To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." (citations omitted)

The plaintiff has established its right to a preliminary injunction since defendant's acts are in clear violation of Section 369-b of the New York General Business Law, and unless restrained pending trial, such conduct will result in irreparable injury to plaintiff and may lead to the destruction of its fair trade

structure and the impairment of its good will.

Accordingly, the preliminary injunction is granted.

Settle order upon notice in accordance with Rule 65(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

This memorandum contains the Findings of Fact and Conclusions of Law required by Rule 52 of the Federal Rules of Civil Procedure.

Plaintiff is to furnish security in the amount of $5,000.00.